JAMES E. GOFFINET et al., Plaintiffs-Appellants, v. THE COUNTY OF CHRISTIAN et al., Defendants-Appellees.

(No. 73-390; )

Fifth District—August 5, 1975.

Rosenberg, Rosenberg, Bickes & Johnson, Chtd., of Decatur (Joseph L. Rosenberg and David L. Johnson, of counsel), for appellants.

Hershey, Bliss, Beavers & Periard, of Taylorville (Richard G. Hershey and Ronald W. Periard, of counsel), for appellees Panhandle Eastern Pipeline Co. and Illinois NapGas Co.

Mr. PRESIDING JUSTICE JONES delivered the opinion of the court:

This appeal is concerned with the validity of a conditional rezoning ordinance adopted by the County Board of Christian County.

A judgment of the circuit court of Christian County denied plaintiffs' relief upon their complaint for a declaratory judgment that a zoning order of the Christian County Board was invalid. The zoning ordinance in question rezoned 236 acres of farmland in a rural section of Christian County from AG-1 (agricultural) to I-2 (heavy industrial). Plaintiffs are owners of land adjoining the property in question and they appeal.

Pursuant to a plan prepared by a consulting firm, Christian County adopted a comprehensive zoning ordinance in 1964. The plan was updated in 1970. Under the plan the 236-acre farm involved here was zoned AG-1. On February 13, 1973, the Christian County Board adopted an ordinance rezoning the land I-2. The rezoning ordinance was adopted upon the petition of Harry Griswold, the fee owner, and Illinois Nap-Gas Company, the option purchaser. The purpose of the rezoning was to permit defendant, Illinois NapGas Company, to construct a plant where synthetic gas would be produced. Defendant, Illinois NapGas, is a wholly owned subsidiary of Trunkline Gas Company. Trunkline is a wholly owned subsidiary of defendant Panhandle Eastern Pipeline Company. The gas produced in the plant would be sold by Illinois NapGas to Trunkline for distribution.

Plaintiffs do not urge any special damages but maintain that the February 13, 1973, rezoning ordinance is void for the reason that it contains unauthorized restrictions and hence constitutes conditional rezoning and also because the ordinance constitutes "spot zoning." These are the issues with which we are confronted.

The disputed ordinance contains four articles. Article I-*Finding of Facts* and Article II-*Enacting Provisions* are pertinent here. The County Board finds and states in Article I (in relevant parts):

> "Section 6. That the best use of the land is for the uses of I-2 heavy industrial to permit the storage of naptha, petroleum products, and similar hydrocarbon products, and the processing of the same into pipe line quality gas suitable for distributor, utility, and industrial purposes.
>
> Section 7. That permitting the foregoing I-2 heavy industrial use of the premises will not adversely affect the use of any of the neighboring land and will have no detriment on the value of the neighboring and adjoining tracts of land.
>
> Section 8. That there now exists in Christian County, Illinois, and the surrounding area a shortage of natural gas, substitute natural gas, and synthetic natural gas, resulting in a gas crisis affecting residents of Christian County, Illinois.
>
> Section 9. That many of the necessary service facilities, indus-

trial facilities, and business facilities, such as St. Vincent's Memorial Hospital of Taylorville, Illinois, Taylorville Co-op Heating Association, farm elevators and individual farm dryers using natural gas for drying purposes, and many of the larger industrial facilities in the county, are presently on interruptable natural gas service by Central Illinois Public Service Company.

Section 10. That the present and projected shortage of natural gas supplies available for use in Christian County is and will require many persons in Christian County, Illinois, to find alternative sources of energy in lieu of natural gas, and the alternative sources of energy are at this time more expensive and limited in availability.

Section 11. That the public health, safety and welfare of Christian County, Illinois, will be promoted by permitting the construction of the proposed facility by Illinois NapGas Company in an effort to eliminate the present natural gas shortage.

Section 12. That the best interest of Christian County will be served by permitting the rezoning and variance requested in the Petition for the following additional grounds:

(a) The proposed facility would tend to increase the supply of natural gas necessary for farm drying operations in Christian County, Illinois.

(b) The proposed facility will increase the assessed valuation in the county and therefore, either (1) lower the overall tax rate on each tract of land in the county, or (2) increase the tax revenue in the county.

(c) The proposed facility would increase the employment during the construction of the facility and during the maintenance and operation of the facility.

(d) That the proposed facility would tend to stimulate the economy of Christian County, Illinois.

Section 13. That the rezoning of the 236 acres, more or less, from agricultural use to heavy industrial use will not significantly affect farm production in Christian County, Illinois, for the reason that there is now lying idle in Christian County, Illinois, 49,198 acres of tillable farmland."

Following a description of the land, Article II-*Enacting Provisions* contains the following sections pertinent to the issues in this case:

"Section 2. That a variance in the use of the premises for I-2 heavy industrial district be permitted to only allow the storage of naptha, petroleum products, similar hydrocarbon products, and

the processing of the same into pipe line quality gas suitable for distributor, utility, and industrial purposes.

Section 3. That the height structures of the proposed facility referred to in the Petition filed herein are necessary as mechanical devices and appurtenances.

Section 4. That prior to any industrial use of the premises by Illinois NapGas Company, a Delaware corporation, or its assigns, the following conditions must be met:

(a) That the Illinois NapGas Company, a Delaware Corporation, or its assigns, fully comply with the existing standards on air, water, noise, sewage pollution, as required by (1) the County of Christian, Illinois, (2) the State of Illinois, and (3) the United States Government.

(b) That Illinois NapGas Company, a Delaware corporation, or its assigns, fully comply with the standards and requirements of the Federal Power Commission of the United States Government.

(c) That Illinois NapGas Company, a Delaware corporation, fully comply with the existing State and Federal safety laws on the handling, processing, and storage of naptha, petroleum products, and similar hydrocarbon products.

Section 5. That the rezoning of said land to I-2 heavy industrial shall be effective as of the date hereof and shall be subject to actual use of the premises for gasification plant facilities as herein proposed. Upon removal of gasification facilities located upon said land by Illinois NapGas Company, its successors or assigns, said land shall revert to a zoning classification of A-I agricultural."

Plaintiffs direct attention to the fact that the rezoning ordinance in question changes the zoning classification from AG-1 to I-2 but also provides that the property affected must be used for the particular plan proposed, and no other, and that upon removal of the particular plant the zoning classification of the property shall revert to agricultural.[1] Plaintiffs argue that the restrictions imposed by the amendment do not apply to other tracts in the same I-2 classification and consequently the rezoning ordinance is conditional and *Treadway v. City of Rockford*, 24 Ill.2d 488, 182 N.E.2d 219, and its progeny, renders it invalid.

Although the validity of a conditional rezoning ordinance was not an

---

[1] Other conditions are in the ordinance but they may be treated as superfluous because they are but restatements of existing legal requirements that would be appended by law to the operation of a gasification plant. We do not concern ourselves with these other conditions.

issue, our supreme court stated by way of dicta in the *Treadway* case:
"The ordinance in question is not, however, an unconditional amendment rezoning the property from a residential to a local business classification. It is conditional upon the owner's entering into a covenant setting forth in some detail the nature of the improvements to be erected on the property. Such conditional amendments have not fared well in the courts of other jurisdictions, and have frequently been invalidated either because they introduce an element of contract which has no place in the legislative process or because they constitute an abrupt departure from the comprehensive plan contemplated in zoning." 24 Ill.2d 488, 496.

The *Treadway* case was reversed and remanded for reasons not involving conditional rezoning. Upon its second appearance in the supreme court, 28 Ill.2d 370, 371, 192 N.E.2d 351, the opinion stated:
"The rezoning ordinance involved in this appeal was passed by the city council of the city of Rockford on June 26, 1962, and reclassifies the subject property from 'A' residential to local business zoning, without the conditional limitations which were the basis for our prior remandment."

Although it is apparent that conditional zoning limitations were not the basis for remandment of the first *Treadway* case, the combined language of the two *Treadway* cases has been suggested as being indicative of the intent of the supreme court to invalidate any and all conditional rezoning in Illinois.

Several appellate court cases have alluded to the *Treadway* dicta, *Hedrich v. Village of Niles*, 112 Ill.App.2d 68, 250 N.E.2d 791; *Shibata v. City of Naperville*, 1 Ill.App.3d 402, 273 N.E.2d 690; *Cederberg v. City of Rockford*, 8 Ill.App.3d 984, 291 N.E.2d 249; and *Andres v. Village of Flossmoor*, 15 Ill.App.3d 655, 304 N.E.2d 700.

In *Hedrich* the court declined to rule upon the validity of conditional rezoning because it had not been ruled upon by the trial court. The case was remanded for that purpose. In *Shibata* the court refused to consider the conditional zoning issue because it was presented by a second amended complaint filed and stricken after the trial court had filed a memorandum of opinion. However, in a footnote to the opinion the *Shibata* court observed:
"Further, in Illinois, the legal status of so-called 'contract zoning' appears not to have been decided although there is *dicta* in *Treadway v. City of Rockford* (1962), 24 Ill.2d 488 and *Hedrich v. Village of Niles* (1969), 112 Ill.App.2d 68 indicating disapproval of such ordinances. In the view we have taken of the case, we

find it unnecessary to rule on any of these questions." 1 Ill.App.3d 402, 405.

In *Cederberg* a rezoning ordinance changing a classification from residence to local business· was held void where, at the suggestion of the zoning authority and as a condition of the enactment of the rezoning ordinance, the owner of the rezoned property executed and recorded a restrictive covenant which limited the use of the land to offices notwithstanding the fact that there could be 44 types of local businesses under the local business classification. In holding the ordinance void the court noted that it "\* \* \* was adopted only because of the limitations contained in the restrictive covenant. The record discloses that *the City gave no consideration to the statutory standards of public health, safety, comfort, morals and welfare.*" (Emphasis added.) (8 Ill. App.3d 984, 988.) In *Andres* the rezoning ordinance imposed nine conditions upon the property including a requirement that the owner-developer must contribute $1,000 per building to the village for general village purposes and must enter into a contract which could be recorded and constitute a covenant running with the land. Quite properly the rezoning ordinance was invalidated.

In a case antedating *Treadway, O'Brien v. City of Chicago* (1952), 347 Ill.App. 45, 51, 105 N.E.2d 917, the court found an ordinance of the city of Chicago to have imposed a condition with respect to the site on which a church may be erected in a single family residence district. It was approved with the language: "There is no question of the city's right to exercise its police power in this fashion provided the conditions are reasonably related to the public health, morals, comfort, safety or welfare." However, we view the case as no more than peripheral authority for the case under consideration since there is apparently a special rule ·regarding the construction of churches in areas zoned residential.

Outside Illinois conditional rezoning ordinances (including those with contract features) have had a mixed reception, with some states disapproving, *e.g.*, Maryland (*Baylis v. City of Baltimore,* (1959), 219 Md. 164, 148 A2d 429); New Jersey (*Houston Petroleum Co. v. Automotive Products Credit Ass'n.,* (1952), 8 N.J. 122, 87 A.2d 319); Michigan (*Sandenburgh v. Michigamme Oil Co.* (1930), 249 Mich. 372, 228 N.W. 707); and Florida (*Hartnett v. Austin* (Fla. 1956), 93 So.2d 86); and some states approving, *e.g.*, Washington (*State ex rel. Myhre v. City of Spokane* (1967), 70 Wash.2d 707, 422 P.2d 790); New York (*Church v. Town of Islip* (1960), 8 N.Y.2d 254, 168 N.E.2d 680); Nebraska (*Bucholz v. City of Omaha* (1963), 174 Neb. 862, 120 N.W.2d 270); Ohio (*Johnson v. Griffiths* (Ohio App. 1955), 74 Ohio L.Abs. 482, 141 N.E.2d 774); Wisconsin (*State ex rel. Zupancic v. Schimenz* (1970), 46 Wis.2d 22,

174 N.W.2d 533); and Massachusetts (*Sylvania Electric Products, Inc. v. City of Newton* (1962), 344 Mass. 428, 183 N.E.2d 118). See also Stefaniak, *The Status of Conditional Rezoning in Illinois*, 63 Ill.B.J. 132 (1974).

In our view, the *Treadway* case and the appellate decisions alluded to do not compel the conclusion that any and every conditional rezoning ordinance adopted by a legislative zoning agency in Illinois will be invalid. *Treadway* stated that conditional rezoning ordinances have not fared well because they introduce an element of contract which has no place in the legislative process or because they constitute an abrupt departure from the comprehensive plan contemplated in zoning. Other faults assigned by courts in their disapproval of conditional rezoning are that the zoning authority might use the zoning power to further private interests in violation of public policy, that the zoning authority might improperly try to control the use of land, that the zoning authority may surrender its governmental powers and functions or inhibit the exercise of its police or legislative powers and that it furnishes an avenue for corruption of officials.

■■ However, we do not believe it to be an absolute precept that any and all conditional rezoning in Illinois is forbidden. Without doubt there is a suitable and proper place for utilization of the process. Some conditional rezoning may be in the public good, subservient to a comprehensive plan, in the best interest of the public health, safety and welfare and enacted in recognition of changing circumstances. Not all conditional rezoning is onerous, destructive or an abandonment of the power of the zoning agency, nor does it stem from improper motives.

But it is not necessary that we here seek to define the limits where conditional rezoning should be either permitted or prohibited. The *Andres* case presents a factual situation where clearly it should be prohibited. It is apparent that the zoning authorities there had overstepped the bounds of reasonableness and were outside the limits of what was tolerable from the standpoint of public policy. Under the proper circumstances conditional rezoning can be a flexible land-use technique of considerable utility and may constitute a valuable tool in the hands of a zoning authority in the proper exercise of their police power. Any alleged abuse is always subject to the scrutiny of the courts and legal processes.

After consideration of policy criteria applicable to conditional rezoning, we are of the opinion that it is neither all bad, nor all good. Neither do we believe that *Treadway* and the other Illinois cases cited irrevocably cast Illinois into that list of states that without exception deny any degree or form of conditions attached to a rezoning ordinance.

The detailed findings of fact made by the Christian County Board, the zoning legislative body, disclose a genuine need for the product to be produced by the plant and it would unquestionably serve the public health, safety and welfare. The conditions imposed take advantage of the unique situation presented by the near confluence of pipelines which makes the particular location highly advantageous for the gas processing plant location. They permit this tract to be utilized to accomplish a good for the general public but yet preserve the integrity of the comprehensive plan. The ordinance evidences a real concern for the public health, safety and welfare—in fact, that appears to be the rationale for its enactment. Should such benefits be denied because use of the particular tract of land is restricted, unlike other areas zoned I-2, to that connected with the processing of natural gas or because upon cessation of such use the classification reverts to AG-1? We think not. No real detriment has been shown to either the adjacent lands or to the comprehensive plan of Christian County. A pipeline pumping station is already located on the premises in question. The comprehensive plan, as noted by the trial court, contemplated that there would eventually be industrial development in the vicinity of the pipeline and under the comprehensive plan the Christian County Board had the power, authority and duty to control special uses under the I-2 classification when the proposed use involved handling of chemicals, gas and oil storage. The benefits received from the rezoning ordinance here far outweigh any evil that may be said to flow from conditional rezoning, per se.

Accordingly, we approve the rezoning ordinance under review. We find it to be reasonable and designed to serve the public health, safety and welfare. The conditions imposed are not onerous to the property owner or incompatible with the comprehensive plan, they permit the serving of a distinct public need, and they do not constitute an abandonment of the zoning power, are not contractual in nature, or limited in their terms and they do not constitute an attempt upon the part of the zoning authority to control the use of the land. Moreover, the ordinance appears to have been enacted in good faith and not as a result of negotiations or improper conduct by officials of the zoning authority, and the conditions imposed have a reasonable and direct relation to the purpose for which the rezoning was granted.

Plaintiffs also argue that the rezoning ordinance in question is spot zoning. Though in several Illinois cases cited by plaintiffs the largest tract involved where the court found spot zoning was 14.6 acres, they argue that acreage is relative and that 236 acres out of a large agricultural area could nevertheless be the subject of spot zoning. We agree that the size of tract involved is relative and that 236 acres might arguably

represent spot zoning. However, there are other factors involved—though it appears that the 14.6 acres which represents the maximum in Illinois might be a record for the United States. Note, in *Spot Zoning and the Comprehensive Plan,* 10 Syr.L.Rev. 303 (1959), the author states that 125 cases were examined in which the term "spot zoning" was used, and that the largest area so designated was 13 acres. Prior to the case holding that 13 acres could constitute spot zoning (*Mathis v. Hannan,* 306 S.W.2d 278 (Ky.App. 1957), Antieu on Municipal Corporation Law § 7.04 (1959) stated that the largest tract so designated was 6 acres. In *Spot Zoning and the Comprehensive Plan* the author suggests five tests in addition to size to determine if a particular ordinance constitutes spot zoning. These are: (1) Are the requirements of a comprehensive plan met by the ordinance; (2) What is the particular use for the "spot"; (3) Are there changes in conditions in the zoning district; (4) Where is the "spot" located; (5) Is a hardship created on any individual?

In the instant case we find that the rezoning ordinance meets these tests. The shift toward industry is recognized in the comprehensive plan for the county. The particular use for the area is one which will benefit large numbers of the public. In this connection it has been held that it was proper to approve apartment construction in a single residence area when a housing shortage was evidence (*Rodgers v. Village of Tarrytown* (1951), 302 N.Y. 115, 96 N.E.2d 731); that a railroad passenger depot was permissible in a residential section because it was a public service facility (*Higbee v. Chicago B. & Q. R. Co.* (1940), 235 Wis. 91, 292 N.W. 320). The author of *Spot Zoning and the Comprehensive Plan* points out that in several cases a shopping area has been approved in a residential district because of convenience to the residents. He generalizes by saying that if the zoning change will add a convenience, fill a need, or provide a service it may be upheld.

With respect to changed conditions in the zoning district, it should be noted that the comprehensive plan for Christian County emphasizes the shift from agriculture to industry and the desirability of industry for economic growth and for keeping young people in the community. We have previously commented on the location of the area involved and find that there are sound reasons for its selection. Though location of a tract on the fringe between two zones may more strongly support a rezoning from one zone to the other, this does not preclude the validity of rezoning a tract not on the fringe. In *Duffcon Concrete Products, Inc. v. Borough of Cresskill* (1949), 1 N.J. 509, 64 A.2d 347, the court said that in making this determination the condition of the entire region and anticipation of future needs must be considered.

With respect to hardship on individuals we find nothing in the record

claiming that there is particular hardship. The finding of the zoning board is that the value of adjacent land will not be decreased and that the use of neighboring land will not be adversely affected. This finding is supported by the record.

■■ Zoning is not an exact science. Neither is the art of planning for zoning. Economic and social considerations not cognizable at the time will arise in the future. There must be flexibility to meet needs. This implies study and wise action by the legislative bodies concerned. The courts do not zone. In the classic case, *Village of Euclid v. Ambler Realty Co.* (1926), 272 U.S. 365, 388, 47 S.Ct. 114, 118, 71 L.Ed. 303, 311, the court said: "If the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control." In *Reskin v. City of Northlake*, 55 Ill.App.2d 184, 189, 204 N.E.2d 600, the court said: "To constitute spot zoning * * * the two requisites which must coexist are: a change of zone applicable only to a small area, and a change which is out of harmony with comprehensive planning for the good of the community as a whole." From the record before us we cannot say as a matter of law that the rezoning ordinance involved is out of harmony with the comprehensive planning for the good of Christian County.

Affirmed.

EBERSPACHER and CARTER, JJ., concur.