(No. 47908.—

JAMES E. GOFFINET *et al.,* Appellants, v. THE COUNTY OF CHRISTIAN *et al.,* Appellees.

*Opinion filed October 1, 1976.*

42

Rosenberg, Rosenberg, Bickes & Johnson, of Decatur (Joseph L. Rosenberg and David L. Johnson, of counsel), for appellants.

John H. Ward, State's Attorney, and Hershey, Bliss,

Beavers & Periard, both of Taylorville (Richard G. Hershey and Ronald W. Periard, of counsel), for appellees.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Harry Griswold, vendor, and Illinois NapGas Co., intended purchaser of a parcel of land, petitioned the Zoning Board of Appeals of Christian County (hereinafter zoning board) requesting that the parcel be rezoned from AG—1 (agricultural) to I—2 (heavy industrial). The zoning board recommended that the Christian County Board (hereinafter county board) deny petitioners' request. The county board, however, by a 20-1 vote, adopted an amendment to its zoning ordinance which rezoned the subject parcel to I—2. Plaintiffs-appellants, owners of the land adjacent to the rezoned tract, filed suit in the circuit court of Christian County. In their amended complaint they sought a declaratory judgment, holding the amendment to the zoning ordinance void, and an injunction enjoining the county board from enforcing the amendment and issuing any building permits to petitioners. The court entered a judgment order declaring the amendment valid and dismissing plaintiffs' suit with prejudice. The appellate court affirmed (*Goffinet v. County of Christian,* 30 Ill. App. 3d 1089), and we granted plaintiffs-appellants leave to appeal. Appellants do not contend that they suffer any special damages but maintain that the February 13, 1973, rezoning ordinance is void for the reason that it contains unauthorized restrictions and hence constitutes conditional rezoning and also because the ordinance constitutes "spot zoning." These are the issues with which we are confronted.

Illinois NapGas Co. (hereinafter NapGas), a subsidiary wholly owned by Trunkline Gas Co. (hereinafter Trunkline), which is a wholly owned subsidiary of Panhandle Eastern Pipeline Co. (hereinafter Panhandle), was formed to obtain a tract of land on which to construct and operate

a synthetic gas production plant. Panhandle acquired an option to purchase a 236-acre parcel of farmland located in Christian County from owner Griswold.

The proposed facility would convert liquid hydrocarbon feedstock into methane gas. The feedstock would be acquired from a pipeline that originates in the Gulf Coast and intersects a distribution line owned by Panhandle one mile north of the proposed plant's site. A pump station, located on the supply line adjacent to the site, would remove the feedstock and pump it into storage tanks. After processing, the finished product would be pumped into the distribution line.

The plant's physical structure would include one 200-foot radio tower, five 150-foot stacks and 12 other stacks ranging from 60 to 75 feet high. Twelve to fourteen inch pipes would tap one million gallons of water daily from the Sangamon River and deliver it to the plant, and a return pipe would carry back to the river all the impurities that the water contained and one fourth of the water taken.

Panhandle retained a consulting firm to help design the plant so that it would operate within the ecological, environmental and safety standards established by local, State and Federal laws. Acceptable amounts of sulfur and carbon monoxide would be released in the atmosphere, and a certain amount of noise would be emitted. Waste materials would be treated and reduced to sludge. The sludge would then be dried out and disposed of either by dumping in a landfill or plowing into the ground on the plant site.

Pursuant to a comprehensive plan prepared for Christian County, the county board adopted a zoning ordinance in 1964 (amended in 1968) zoning the tract of land for agricultural use. Both the comprehensive plan of 1964 and its 1970 update stated that the highest and best use of the land was agricultural. The plan also cautioned that more emphasis must be placed on industry in order for the

county to offer vocational opportunities to the youth of the community and to attain economic growth.

On February 13, 1973, the county board, pursuant to the request of Griswold and NapGas for rezoning and a variance of use of the subject tract, rejected the zoning board's recommendation and enacted an amendment which conditionally rezoned the parcel of land to I—2.

The disputed ordinance contains four articles. We find that articles I and II are pertinent to this appeal. Article I, entitled "Finding of Facts," provides, in relevant part:

"Section 6. That the best use of the land is for the uses of I—2 heavy industrial to permit the storage of naptha, petroleum products, and similar hydrocarbon products, and the processing of the same into pipe line quality gas suitable for distributor, utility, and industrial purposes.

Section 7. That permitting the foregoing I—2 heavy industrial use of the premises will not adversely affect the use of any of the neighboring land and will have no detriment on the value of the neighboring and adjoining tracts of land.

Section 8. That there now exists in Christian County, Illinois, and the surrounding area a shortage of natural gas, substitute natural gas, and synthetic natural gas, resulting in a gas crisis affecting residents of Christian County, Illinois.

Section 9. That many of the necessary service facilities, industrial facilities, and business facilities, such as St. Vincent's Memorial Hospital of Taylorville, Illinois, Taylorville Co-op Heating Association, farm elevators and individual farm dryers using natural gas for drying purposes, and many of the larger industrial facilities in the county, are presently on interruptable natural gas service by Central Illinois Public Service Company.

Section 10. That the present and projected shortage of natural gas supplies available for use in Christian County is and will require many persons in Christian County, Illinois, to find alternative sources of energy in lieu of natural gas, and the alternative sources of energy are at this time more expensive and limited in availability.

Section 11. That the public health, safety and welfare of Christian County, Illinois, will be promoted by

permitting the construction of the proposed facility by Illinois NapGas Company in an effort to eliminate the present natural gas shortage.

Section 12. That the best interest of Christian County will be served by permitting the rezoning and variance requested in the Petition for the following additional grounds:

(a) The proposed facility would tend to increase the supply of natural gas necessary for farm drying operations in Christian County, Illinois.

(b) The proposed facility will increase the assessed valuation in the county and therefore, either (1) lower the overall tax rate on each tract of land in the county, or (2) increase the tax revenue in the county.

(c) The proposed facility would increase the employment during the construction of the facility and during the maintenance and operation of the facility.

(d) That the proposed facility would tend to stimulate the economy of Christian County, Illinois.

Section 13. That the rezoning of the 236 acres, more or less, from agricultural use to heavy industrial use will not significantly affect farm production in Christian County, Illinois, for the reason that there is now lying idle in Christian County, Illinois, 49,198 acres of tillable farmland."

Article II, entitled "Enacting Provisions," provides, in its pertinent sections:

"Section 2. That a variance in the use of the premises for I—2 heavy industrial district be permitted to only allow the storage of naptha, petroleum products, similar hydrocarbon products, and the processing of the same into pipe line quality gas suitable for distributor, utility, and industrial purposes.

Section 3. That the height structures of the proposed facility referred to in the Petition filed herein are necessary as mechanical devices and appurtenances.

Section 4. That prior to any industrial use of the premises by Illinois NapGas Company, a Delaware corporation, or its assigns, the following conditions must be met:

(a) That the Illinois NapGas Company, a Dela-

ware corporation, or its assigns, fully comply with the existing standards on air, water, noise, sewage pollution, as required by (1) the County of Christian, Illinois, (2) the State of Illinois, and (3) the United States Government.

(b) That Illinois NapGas Company, a Delaware corporation, or its assigns, fully comply with the standards and requirements of the Federal Power Commission of the United States Government.

(c) That Illinois NapGas Company, a Delaware corporation, fully comply with the existing State and Federal safety laws on the handling, processing, and storage of naptha, petroleum products, and similar hydrocarbon products.

Section 5. That the rezoning of said land to I—2 heavy industrial shall be effective as of the date hereof and shall be subject to actual use of the premises for gasification plant facilities as herein proposed. Upon removal of gasification facilities located upon said land by Illinois NapGas Company, its successors or assigns, said land shall revert to a zoning classification of A—1 agricultural."

Appellants argue that this ordinance should be held invalid because (1) placing restrictions on land zoned heavy industry which do not apply to other tracts in the same zoning classification is conditional zoning; and (2) rezoning this tract of land I—2 in an area that is fundamentally agricultural constitutes spot zoning.

Appellants rely heavily on *Treadway v. City of Rockford,* 24 Ill. 2d 488, and *Treadway v. City of Rockford,* 28 Ill. 2d 370 (hereinafter *Treadway 1* and *Treadway II*), to support their contention that any conditional zoning is invalid. In *Treadway 1,* a case concerning a city ordinance which rezoned property from a residential to a business classification, the court addressed itself to the extensive conditions and restrictions the trial court had placed on the subject property in its order holding the ordinance valid. The court held that the trial court misinterpreted the holding in *Sinclair Pipe Line Co. v. Village of Richton Park,* 19 Ill. 2d 370, which provided

that the trial court, in deciding whether a zoning ordinance as applied to a particular tract was valid, could frame its decree, with reference to the record, in terms which would neither result in an unzoned property when declaring the zoning ordinance void nor result in relief so broad that it would allow the property owner to use the property for uses other than contemplated at the time the ordinance was declared invalid as to that property. The court further held in *Treadway 1* that the trial court exceeded its authority in imposing restrictions in addition to those imposed by the city. That court should have decided solely whether the rezoning was valid or invalid, since if it were the latter, the property would still be subject to the preceding classification.

In *Treadway II,* this court held that the zoning amendment was invalid because the use proposed would adversely affect the surrounding residential area and no countervailing factors of public welfare, safety or morals were presented. Neither *Treadway I* nor *II* held conditional zoning invalid on its face.

The confusion lies in *dicta* found in *Treadway 1,* wherein it was stated:

"The ordinance in question is not, however, an unconditional amendment rezoning the property from a residential to a local business classification. It is conditional upon the owner's entering into a covenant setting forth in some detail the nature of the improvements to be erected on the property. Such conditional amendments have not fared well in the courts of other jurisdictions, and have frequently been invalidated either because they introduce an element of contract which has no place in the legislative process or because they constitute an abrupt departure from the comprehensive plan contemplated in zoning." (24 Ill. 2d at 496-97.)

This case was reversed based upon the grounds stated

above, which did not involve the conditions placed on the rezoning by the city council.

In *Treadway II,* the court noted:

"The rezoning ordinance involved in this appeal was passed by the city council of the city of Rockford on June 26, 1962, and reclassifies the subject property from 'A' residential to local business zoning, without the conditional limitations which were the basis for our prior remandment [*Treadway I*]." (28 Ill. 2d at 371.)

The court's reference to "conditional limitations" alludes to those limitations imposed by the trial court and not to the conditions which were enacted by the city council.

The appellants cite *Hedrich v. Village of Niles,* 112 Ill. App. 2d 68, *Shibata v. City of Naperville,* 1 Ill. App. 3d 402, *Cederberg v. City of Rockford,* 8 Ill. App. 3d 984, and *Andres v. Village of Flossmoor,* 15 Ill. App. 3d 655, in support of their reading of *Treadway I* and *II,* which purports to hold conditional rezoning invalid. As the appellate court reasoned, these cases are inapplicable. In *Hedrich,* conditional rezoning was not a proper issue on review, because it had not been considered by the trial court. The appellate court in *Shibata* found that it did not have to consider the validity of the restrictions of the rezoning classification, because any disposition of this issue would not affect the outcome of the appeal. In *Cederberg,* while the trial court found that an ordinance granting "local business zoning" to certain property was valid, it held the restrictive covenant executed by the owner of the property void. On appeal of the trial court's decision that the ordinance was valid, the appellate court reversed because the enactment of the ordinance was conditioned upon the limitations contained in the restrictive covenant. The *Andres* case was clearly a demonstration of improper conditional rezoning. The conditions placed in the rezoning ordinance introduced elements of contract, which have no place in the legislative process,

and showed an abuse of zoning authority. "Zoning lies primarily within the province of the municipality, and it is neither the province nor the duty of courts to interfere with the discretion with which the municipal authorities are vested unless the action of the municipal authorities is shown to be unrelated to the public health, safety, and morals." (*Treadway v. City of Rockford*, 24 Ill. 2d 488, 493-94.) Such zoning which the courts have considered to be unrelated to the public health, safety and morals has been elaborately pointed out by the appellate court.

The conditions set forth in the amendment in the present case are not of such a nature as to constitute an abrupt departure from the comprehensive zoning plan of Christian County, which emphasizes substantial industrial development for the future. Such conditions can be deemed neither a surrender of governmental authority by the county nor an attempt to improperly control the use of land.

Having determined that conditional rezoning is not invalid *per se,* we focus on the validity of the present amendment. In *La Salle National Bank v. County of Cook,* 12 Ill. 2d 40, 46-47, this court, in determining the validity of the zoning ordinance, considered six factors: (1) existing uses and zoning of nearby property; (2) the extent to which property values are diminished by the restrictions; (3) the extent to which the ordinance promotes health, safety, morals or general welfare of the public; (4) relative gain to the public as compared to the hardship imposed upon the individual property owner; (5) the suitability of the subject property for the zoned purposes; and (6) the length of time the property has been vacant as zoned considered in the context of land development in the area in the vicinity of the subject property.

The parcel of land in question is one of the finest tracts for farming in the midwest area. However, the feedstock supply line intersects the gas distribution line near this tract. A pump station, already constructed, is

located on the proposed site, and the river which will provide the needed water is seven or eight miles away. The position of these pipelines, the pump and the availability of the land make this tract unique, and the operation of a gasification plant could very well be considered the highest and best use for this parcel. The facility is to manufacture gas, of which there is a shortage in the community. The comprehensive plan prepared for Christian County stated that the youth of the community is being lost to other cities that offer employment and opportunity and that the very survival of Christian County depends upon attracting and establishing industry in the area. Moreover, none of the appellants has offered any evidence that would show that their lands would be adversely affected by the construction and operation of the proposed plant. The record shows that no hardship or decline in property values would be borne by the neighboring landowners, whereas the public gain would be substantial. The facility will serve the public health, safety and welfare, and the uniqueness of this particular tract makes it the most suitable for the intended use. These factors substantially meet the tests enumerated in *La Salle.*

Considering the factual situation of the present case, it would have been preferable for the county board to amend the special use section of the agricultural provisions in the zoning ordinance (art. III, sec. 33 (1968)) to include the gasification facility as an allowed special use and then grant the special use permit to NapGas, rather than to conditionally rezone the tract to be used only for the purpose of constructing and operating a facility. We find, however, that in this situation the conditional zoning ordinance with a reverter clause and a special use permit are indistinguishable and, assuming that the proper amendment procedures were followed, the former should not be less valid than the latter.

Appellants claim that the reverter clause in the amendment is "patently unlawful" because it "purports to

establish a future rezoning with no pretense of compliance with the provisions required in the zoning ordinance." Although the amendment is silent as to what procedures would be followed prior to reversion, it is part of and governed by the entire zoning ordinance, which confers due process safeguards on those affected by any change in zoning or use.

The Christian County zoning ordinance empowers a "County Zoning Enforcing Officer" to administer and enforce the provisions of the ordinance (art. XIV, sec. 141.01). It also provides that the "administration" and "enforcement" of the ordinance shall be "in accordance with the provisions of Chapter 34, Sec. 3151-3161, Ill. Rev. Stats., 1967 ***." Under section 1 of "An Act in relation to county zoning" (Ill. Rev. Stat. 1967, ch. 34, par. 3151) the county boards have the power to "restrict the location and use of buildings, structures and land," and section 3 of the same act (ch. 34, par. 3153) provides that the enforcing officer may be vested with "the power to make orders, requirements, decisions and determinations with respect to *** the enforcement of the terms of the ordinance or resolution." It clearly follows that one of the enforcing officer's duties is to insure that holders of special use permits and owners of land which has been conditionally zoned comply with the respective conditions and limitations. Therefore, we conclude that when a finding is made by the enforcing officer that the restrictions imposed by a special use permit or the conditions placed upon a rezoning amendment, which we find to be indistinguishable, were not complied with, no other interpretation can be given but that the special use and conditional zoning would terminate and the property would again have the prior zoning classification. An adverse determination by the enforcing officer may be appealed to the zoning board of appeals by the holder of the permit or the owner of the land. This would allow the affected party a hearing before the board to present his case. (Ill. Rev. Stat. 1975, ch. 34,

54

par. 3156.) This procedure is in accordance with the statute and affords the necessary due process safeguards.

Appellants' second contention, that the amendment constituted spot zoning which should be held invalid, is also defective. In *Fifteen Fifty North State Building Corp. v. City of Chicago,* 15 Ill. 2d 408, 418-19, cited neither by appellants nor appellees, this court stated that although it did not encourage inconsistent zoning of small parcels of land, it would not declare every reclassification of a single tract void *ipso facto.* The test was to determine whether the change was in harmony with a comprehensive plan for the use of the property in that locality, and the size of the parcel would only be one factor to consider. We hold that the appellate court was not in error in finding that the construction and operation of this proposed gasification plant are in harmony with the comprehensive plan for use of property in Christian County. As stated above, the plan has emphasized the importance of shifting from agriculture to industry in the future. Therefore, we hold the amendment to the zoning ordinance valid.

Accordingly, the judgment of the appellate court is affirmed.

*Judgment affirmed.*