600 P.2d 86 (1979)
INFORMATION PLEASE, INC., John Amen, Rueben Bostron, George Green, and Harold E. Griffith, Plaintiffs-Appellants,
v.
BOARD OF COUNTY COMMISSIONERS OF MORGAN COUNTY, County Planning Commission of Morgan County, and Public Service Company of Colorado, Defendants-Appellees.
No. 78-833.
Colorado Court of Appeals, Div. III.
April 26, 1979.
Rehearing Denied May 24, 1979.
Certiorari Denied September 24, 1979.
*87 Yegge, Hall & Evans, Michael D. White, Raymond L. Petros, Denver, Albert & Teichman, Peter Alpert, Fort Morgan, for plaintiffs-appellants.
George Reddin, Fort Morgan, for defendant-appellee Bd. of County Com'rs of Morgan County.
E. Ord Wells, Fort Morgan, for defendant-appellee County Planning Commission of Morgan County.
Kelly, Stansfield & O'Donnell, Fred Witsell, Timothy J. Flanagan, Denver, C. H. Anderson, Brush, for defendant-appellee Public Service Co. of Colorado.
RULAND, Judge.
Plaintiffs appeal from a judgment of the district court which approved the order of defendant, Board of County Commissioners, rezoning 1,680 acres from A-2 (agricultural) to H-1 (heavy industrial). We affirm.
The record reflects that on June 24, 1975, the Board adopted a zoning resolution for the county. In the A-2 zone, uses were generally limited to various forms of agriculture. The H-1 zone pertains to heavy industrial and manufacturing activities.
*88 Defendant, Public Service Company, acquired a 1,680-acre site in Morgan County for the purpose of erecting a coal-fired, 500 megawatt electric generating plant to be known as Pawnee I. Another 500 megawatt plant was planned for the same property in the future. The individual plaintiffs own farms near the proposed site of the power plant. Plaintiff, Information Please, Inc., is a non-profit corporation composed of the individual plaintiffs, other nearby residents, and other citizens in Morgan County.
On April 20, 1976, Public Service filed an application with the planning commission to rezone the site to the H-1 classification. Public Service also filed an application for a special use permit in the H-1 zone to build Pawnee I. A majority of the planning commission recommended that both applications be denied.
A public hearing was scheduled before the Board. In an unusual and admirable display of public interest, numerous letters were directed to the Board from municipal, business, school, and farm organizations, as well as individuals and students. Some of the letters favored the applications and some were opposed. At the hearing, testimony and numerous exhibits were introduced which also produced conflicting viewpoints on most issues relative to the applications. The Board, after consideration of the conflicting views, granted both applications on October 12, 1976.
In support of its decision, the Board found, inter alia, that 94% of the soil on the 1,680-acre tract was of poor agricultural quality. The Board also found that since the adoption of the 1975 resolution, there had been a continuing change in the method of conducting agricultural operations to the extent that increased acreage was necessary to support a family farming unit, and that the land in question was less adequate to support agricultural operations than it was at the time the resolution was adopted. The Board determined that the federal and state safeguards for generation of electric power insure that operations of Pawnee I would not be detrimental to, but would be in harmony with the present land uses, that the zoning change would not affect the stability of the area because the Board "would consider each subsequent case on its own merits," and that Public Service owned adequate rights to operate the plant. The Board noted that construction of the plant was a point of concern "beyond the limits of Morgan County" and that the Public Utilities Commission had determined that the present and future public convenience and necessity required construction of an additional 500 megawatt plant. The Board then concluded that substantial economic benefit would inure to the county from an increased tax base as well as creation of additional employment.
Plaintiffs filed this action pursuant to C.R.C.P. 106(a)(4) seeking review of the Board's decision. In approving the Board's order, the district court determined from a review of the record that the population of Morgan County had been declining since 1940, that the number of people employed by agriculture had been decreasing, that young people had been leaving Morgan County to find job opportunities elsewhere, and that the average per capita income in Morgan County was about 76% of the state average. The court further noted that 95% of the land in Morgan County was used for agriculture and that the amount of land in crops and irrigated farms had remained the same in the 15-year period from 1959 through 1974.
The court referred to evidence establishing that there were no electricity generating plants in the county, but that the demands for agricultural electric power were increasing. The court observed that construction of the Pawnee Plant would add approximately $46,000,000 to the tax base of the county, and that the estimated three-year construction period would provide a substantial payroll. The court noted that, upon completion of the plant, employment would be increased by approximately 100 permanent employees whose demands for goods and services would create an estimated 150 additional jobs. The court concurred in the Board's finding that the rezoning would not upset the stability of zoning *89 throughout the county and that the rezoning involved public interest considerations of great import. The court therefore affirmed the Board's order.
On appeal to this court, plaintiffs' principal contentions relate to sufficiency of the record certified to the district court by the Board and the competency of the evidence to support the Board's rezoning order.

I. The Record

The verification of the record which was filed with the district court dated February 1, 1978, reflects that the deputy clerk included "all of the record ... filed with the planning commission and the Board ...." However, numerous documents in the record do not reflect the date that they were received by the commission or the Board. In addition, the transcript of the hearing before the Board contains no reference as to when some of the documents were received. On this basis, plaintiffs contend that the record is fatally deficient because certain of the documents could have been added to the record after the hearing before the Board, and, in any event, plaintiffs did not have an opportunity to cross-examine the authors of the documents, or to present evidence in opposition to their contents. Plaintiffs also object to certain information concerning water rights attached to Public Service's brief on legal issues which it filed with the Board. Because of these defects, plaintiffs assert that the Board's order must be set aside. We find not merit in this contention.
In Civil Service Commission v. Doyle, 174 Colo. 149, 483 P.2d 380 (1971), our Supreme Court held that: "[O]nce a record has been certified by the administrative tribunal to the review court, the burden is upon the person seeking review not only to show that there are imperfections in the record but also, to show that such imperfections would prejudice this person upon review." Plaintiffs have failed to sustain that burden in this case.
Hearings before the Board to rezone property are not governed by the technical requirement relative to admission of evidence that pertain to a judicial proceeding. See Monte Vista Professional Building, Inc. v. Monte Vista, 35 Colo.App. 235, 531 P.2d 400 (1975). And, with few exceptions, all documents in the record bear a date of preparation prior to the date of the public hearing before the Board. Further, plaintiffs have failed to establish that any of the documents not specifically referred to in the transcript of the hearing prejudiced their case. Finally, we view the attachment to Public Service's brief pertaining to the availability of water as merely cumulative of other evidence in the record.

II. The Rezoning Order

As to the rezoning order, plaintiffs contend that the rezoning order was invalid because: (a) Construction of the plan does not promote the public interest; (b) construction of Pawnee I will not harmonize with existing uses of adjacent property; (c) Public Service failed to establish that its property cannot be used for any purpose in the zoning classifications between A-2 and H-1; (d) the order constituted spot zoning; and, (e) there was no material change of conditions in the affected neighborhood between the date of the 1975 resolution and the date rezoning was approved. We find no merit in these contentions.
Contrary to plaintiffs' assertion, the record reveals ample competent evidence to support the Board's determination that the rezoning order best serves the public interest, welfare, and prosperity of the inhabitants of Morgan County. See § 30-28-115, C.R.S. 1973; Holly Development, Inc. v. Board of County Commissioners, 140 Colo. 95, 342 P.2d 1032 (1959). In addition to the specific facts supporting this determination referred to in the findings of the Board and the district court, the record reflects other such facts.
For example, Brush and Fort Morgan are the two largest towns in the county. Brush has shown no increase in population for a period in excess of 40 years, the hospitals and schools in both towns are not fully utilized, and the real estate market is described as static. Thus, the mayor and *90 town council of Brush urged adoption of the rezoning because of its economic impact as did the governing body of Fort Morgan. Conversely, as a result of negotiations between Public Service and the Riverside Irrigation District, construction of a 60,000-acre feet reservoir was contemplated as a storage basin for water to operate Pawnee I. Yet, Public Service anticipated use of only 28,000-acre feet for the plant with the balance to be applied for agricultural uses.
We also reject plaintiffs' contention that construction of Pawnee I would not harmonize with existing uses of the adjacent property and that the rezoning order would defeat the land use stability contemplated by the 1975 resolution. Competent evidence was presented to the Board which reflects various efforts on the part of Public Service to insure that operation of Pawnee I would not disrupt or otherwise affect adjacent farming operations. Moreover, as the Board recited in its order, the stability of the county zoning is not in jeopardy because the Board has no obligation to expand the H-1 classification in this area and any future application would be judged on its own merits. Conversely, approximately 95% of the land in the county is already zoned for agricultural purposes.
We find no merit in plaintiffs' argument that the Board was not empowered to grant the rezoning request absent a showing by Public Service that its property could not be used reasonably in any of the seven intervening zones between A-2 and H-1 classifications. Evidence that the property cannot be used for purposes specified in the intervening zones is a prerequisite only if the rezoning request is denied and the landowner contends that the denial constitutes confiscation of his property. See, e. g., Ford Leasing Development Co. v. Board of County Commissioners, 186 Colo. 418, 528 P.2d 237 (1974); Garrett v. Littleton, 177 Colo. 167, 493 P.2d 370 (1972).
And, contrary to plaintiffs' argument, we do not view the Board's order as spot zoning. Prohibited spot zoning occurs only when it appears that the rezoning order is designed to relieve a particular property from applicable zoning restrictions, see Clark v. Boulder, 146 Colo. 526, 362 P.2d 160 (1961), and not when, as here, the purpose of the order is substantially to enhance the public welfare of an entire county based on its energy and economic needs. See, e. g., Goffinet v. County of Christian, 30 Ill. App.3d 1089, 333 N.E.2d 731 (1975), aff'd, 65 Ill.2d 40, 2 Ill.Dec. 275, 357 N.E.2d 442 (1976); Holt v. Salem, 192 Or. 200, 234 P.2d 564 (1951).
We, therefore, address plaintiffs' final challenge to the Board's order, namely, failure to establish a material change in the affected neighborhood.
We recognize that where, as here, adjacent landowners challenge the rezoning order and the county has no comprehensive zoning plan, a material change in the affected area must be shown; and, the requisite change is measured based upon the time interval between the previous valid ordinance and the one effecting the change. Roosevelt v. Englewood, 176 Colo. 576, 492 P.2d 65 (1971); see also King's Mill Homeowners Ass'n, Inc. v. Westminster, 192 Colo. 305, 557 P.2d 1186 (1976); Huneke v. Glaspy, 155 Colo. 593, 396 P.2d 453 (1964); Clark v. Boulder, supra. However, we also recognize that:
"Zoning is not an exact science. Neither is the art of planning for zoning. Economic and social considerations not cognizable at the time will arise in the future. There must be flexibility to meet needs." Goffinet v. County of Christian, supra.

Viewed in this context, we conclude that the Board's decision must be upheld.
While the material changes in the agricultural economy of Morgan County relied upon by the Board obviously commenced before the adoption of the 1975 resolution, it is equally apparent that those changes were continuing and that the opportunity to enhance the economic needs of the county was not anticipated at that time. Conversely, in determining the materiality of any change, there is no requirement that a physical change in the neighborhood appear, and the Board may consider the needs of *91 the entire county as well as the affected neighborhood. See Roosevelt v. Englewood, supra; see also Corper v. Denver, 191 Colo. 252, 552 P.2d 13 (1976). In view of the foregoing, to say now that the changes may not be recognized merely because their inception predates the original zoning resolution would be to deprive the Board of the necessary flexibility to rezone where such is required to substantially further the public welfare of the entire county. See, e. g., Roosevelt, supra; Corper, supra. We do not view the judicial precedent in this state as imposing such stringent limitations on the rezoning function of the Board. See United States v. Smith, 154 Colo. 209, 389 P.2d 409 (1964).
We have considered plaintiffs' other allegations of error and find them to be without merit.
Judgment affirmed.
ENOCH and PIERCE, JJ., concur.