Neal CARRON, Jim Johnnie, Shirley Johnnie, Roger Loper, Ann Loper, Roger Smith, Linda Smith, Plaintiffs–Appellants,

v.

BOARD OF COUNTY COMMISSIONERS, OURAY COUNTY, Don A. Caddy, Joe Mattivi, Alan Staehle, Ron Bell, Robert J. Jepsen, Myrna L. Jepsen, Defendants–Appellees.

No. 97CA1517.

Colorado Court of Appeals, Div. III.

Oct. 15, 1998.

Rehearing Denied Nov. 27, 1998.

Certiorari Denied May 17, 1999.

K. Kane Graves, Bayfield, for Plaintiffs–Appellants.

Younge & Hockensmith, P.C., Earl G. Rhodes, Lauretta A. Martin Sullivan, Grand Junction, Colorado; Tisdel, Hockersmith & Burns, P.C., Michael D. Hockersmith, Ouray, for Defendants–Appellees.

Opinion by Judge RULAND.

This is an action for declaratory judgment to determine whether the "delineation" procedure in the Foothills/Valley District of the Ouray County Land Use Code (Code) is val-id. Plaintiffs, Neal Carron, Jim Johnnie, Shirley Johnnie, Roger Loper, Ann Loper, Roger Smith, and Linda Smith, appeal from the summary judgment entered in favor of defendants, the Board of County Commissioners of Ouray County, Don A. Caddy, Joe Mattivi, Alan Staehle, Ron Bell, Robert J. Jepsen, and Myrna L. Jepsen. We affirm.

The County is divided into four zoning "districts," two of which are relevant to this appeal: Foothills and Valley. While designated as separate districts in the Code, the boundaries for these classifications are within one district on the zoning map. Plaintiffs are property owners of unincorporated land located in the Foothills/Valley zone of the County.

According to the Code:

The intent of the Foothills Zone is to preserve the visual landscape while directing residential development into areas not traditionally used or productive for crops or pasture. Valley zone areas are those where visual quality and traditional agricultural uses will be preserved, while accommodating low density residential uses.

Further, pursuant to the Code a parcel of land in this district is presumed Valley unless and until the property owner applies to the County and obtains a specific determination for that parcel. This process, termed "delineation," is primarily based upon an on-site assessment. The Code requires the County to consider whether:

1. The land is irrigated by ditches or other means that support agriculture and ... has been ... for any period of time.

2. The land has been cleared of native vegetation and is or has been irrigated for the growing of crops.

3. Areas of the land are sub-irrigated or are classified as wetlands.

4. The land is alluvial valley fill either directly deposited or reworked by water, that has not been irrigated and has an aerial canopy of low lying vegetation that is greater than fifty (50) percent of the canopy cover.

Uses allowed by right are essentially the same in each classification. However, a

Foothills classification accommodates some different special uses than Valley. And, the Foothills classification also allows greater residential density and development. There is no requirement that parcels delineated as Foothills be adjacent to each other.

Plaintiffs challenge the delineation process contending that such exceeds the statutory authority of the County in adopting a Master Land Use Plan. Following submission of cross-motions for summary judgment, the trial court concluded that delineation was permitted. The court also held that the criteria included in the Code that distinguish Foothills from Valley were not impermissibly vague. This appeal followed.

### I.

■ Plaintiffs contend that the trial court erred in failing to conclude, as a matter of law, that the delineation procedure violates the applicable statutes. In effect, plaintiffs argue that a parcel-by-parcel determination within the same district is not permitted.

In support of this contention, plaintiffs rely primarily upon § 30–28–111 and § 30–28–113, C.R.S.1998. As relevant to plaintiffs' argument, § 30–28–111(1), C.R.S.1998, requires that zoning recommendations be made by the Planning Commission to the County Commissioners for "regulation by districts or zones." Section 30–28–113 then provides that:

(1) [I]n order to accomplish such [zoning] regulation, the … county … *may* divide the territory … into districts or zones of such number, shape or area as it may determine….

(2) … All such regulations shall be uniform for each class or kind of building or structure throughout any district….

(emphasis supplied)

■ Our review of a summary judgment is *de novo. Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board,* 901 P.2d 1251 (Colo.1995). Here, both parties assert, and we agree, that there are no genuine issues of material fact that preclude resolution of plaintiffs' contention as a question of law. And, we conclude that the trial court's ruling was correct.

In resolving plaintiffs' contention, we look first to the express language of the statute to determine the intent of the General Assembly in authorizing the County to divide unincorporated areas into districts for zoning purposes. *See Board of County Commissioners v. Bainbridge, Inc.,* 929 P.2d 691 (Colo.1996).

Here, while the statute references the use of districts, there is no express limitation against multiple types of uses within the same district. Instead, the General Assembly has declared in § 30–28–115, C.R.S.1998, that zoning regulations should promote, among other things, the health and safety of present and future inhabitants by classifying land uses and distributing land development and utilization. This statute also specifically references "fostering the state's agriculture." The delineation procedure serves those objectives.

In addition, the Local Government Land Use Control Enabling Act, § 29–20–101, et seq., C.R.S.1998, specifies in § 29–20–102, C.R.S.1998, that "the policy of this state is to clarify and provide broad authority to local governments to plan for and regulate the use of land within their respective jurisdictions." And, in § 29–20–104(1), C.R.S.1998, of that Act, each local government is authorized "to plan for and regulate the use of land by," among other things:

(e) Regulating the location of activities and developments which may result in significant changes in population density;

(f) Providing for phased development of services and facilities;

(g) Regulating the use of land on the basis of the impact thereof on the community or surrounding areas; and

(h) Otherwise planning for and regulating the use of land so as to provide planned and orderly use of land and protection of the environment in a manner consistent with constitutional rights.

*See C & M Sand & Gravel v. Board of County Commissioners,* 673 P.2d 1013 (Colo. App.1983).

Thus, a zoning code setting out standards for granting or denying special uses within

the same district is permitted. As pertinent here, standards for each use may be based upon compatibility with the character of the surrounding area. Finally, the standards may include consideration of whether certain uses will cause pollution or traffic congestion or whether they will otherwise be detrimental to the health, safety, or welfare of the county. *See C & M Sand & Gravel v. Board of County Commissioners, supra; see also* § 24–67–105, C.R.S. 1998 (addressing planned unit development).

The delineation process is similar to that adopted for special uses. And, either tool is designed to attain the flexibility necessary to provide for more compatible development patterns. *See Sherman v. City of Colorado Springs,* 763 P.2d 292 (Colo.1988) (noting the current use of floating zones within the same district); *see also* 3 E. Ziegler, *Rathkopf's The Law of Zoning & Planning* § 29B.02 (4th ed.1990) (discussing floating zones). Finally, we may not read into the statute a limitation on the County's authority that does not otherwise exist. *See Colorado State Board of Land Commissioners v. Colorado Mined Land Reclamation Board,* 809 P.2d 974 (Colo.1991) (if General Assembly had intended school lands not to be subject to county's zoning resolution, it would have so provided).

Accordingly, based upon the foregoing, we hold that the reference to districts in § 30–28–113 does not preclude the delineation process adopted by the County for the Foothills/Valley area. Instead, the County has in fact been divided into districts for zoning purposes, and thus, the requirements of the statute are satisfied.

## II.

Contrary to plaintiffs' contention, we do not view *Holly Development, Inc. v. Board of County Commissioners,* 140 Colo. 95, 342 P.2d 1032 (1959) as supportive of their assertion that the Code is invalid.

Plaintiffs read *Holly* as requiring an amendment to the zoning map each time a parcel is delineated, and they point out that no such procedure is followed by the County here. However, in *Holly,* our supreme court addressed the validity of a rezoning resolution under circumstances in which the County had failed to provide proper notice to the public of a proposed significant zoning change that reduced the acreage requirement in a particular area for single family residences from 2.5 acres to .25.

In the course of analyzing deficiencies in the County's procedure, the court noted the necessity of changing the map as soon after a rezone approval as reasonably possible in order to inform those affected by any change.

Here, however, the public is informed by the Code that either a Foothills or Valley designation may exist in the district for any particular parcel. Those parcels designated as Foothills are recorded on a list maintained in the County offices for the public. Hence, property owners can readily determine the status of each parcel.

## III.

Plaintiffs finally contend that an order entered providing for a Foothills designation constitutes spot zoning. We disagree.

Prohibited spot zoning occurs only when it appears that the rezoning order is designed to relieve a particular property from applicable zoning restrictions. *See Clark v. City of Boulder,* 146 Colo. 526, 362 P.2d 160 (1961). Here, as noted, the laudable purpose of the procedure is to designate the uses of each parcel within the district consistent with its prior historical use and the unique character of that area. *See Information Please, Inc. v. Board of County Commissioners,* 42 Colo.App. 392, 600 P.2d 86 (1979).

Accordingly, the judgment is affirmed.

Judge JONES and Judge DAVIDSON concur.