VINCENT NOLAN, JR., *et al.*, Plaintiffs-Appellees, *v.* THE CITY OF TAYLORVILLE, Defendant-Appellant.—(THOMAS J. BLAND, JR., *et al.*, Intervening Defendants-Appellants.)

Fifth District    No. 80-322

Opinion filed April 1, 1981.

Miley, Meyer & Austin, of Taylorville (Daniel W. Austin, of counsel), for appellants.

Frank B. Schweitzer, of Taylorville, for appellees.

Mr. JUSTICE WELCH delivered the opinion of the court:

This action was brought by neighboring landowners against the City of Taylorville to have two city ordinances invalidated. One rezoned a tract of land from single-family residential to multiple-family residential use, and the other granted a special use on the tract to build a 134-unit apartment building for the elderly and handicapped. The owners of the tract of land and the developer of the high-rise were allowed to intervene as defendants. In a bench trial the court ruled that both ordinances were invalid because they were conditional or contract zoning and were unrelated to the welfare of the community as a whole. The defendants appeal.

The defendants assert that the trial court improperly placed the burden of proof upon them to uphold the validity of the ordinances in question. They also assert that the findings that the ordinances were conditional or contract zoning and arbitrary and capricious were against the manifest weight of the evidence.

The land involved in this case is a tract of approximately two acres known as the Bland tract. It is within the city limits of Taylorville, Illinois, surrounded on all sides by properties which are zoned "R-1," single-family residential use. The "R-1" classification had, until 1980, allowed for the construction of churches and schools without the need for special permission. It had in addition allowed for certain businesses to be operated from a home upon the granting of a special use permit.

The properties abutting the Bland tract include a church, three

schools, and a number of single-family dwellings, most of which are one or one and a half stories tall. One of the homes, owned by one of the defendants, has a special use permit to allow the owner to operate a real estate brokerage on the premises.

On October 25, 1979, three owners of the Bland tract, William E. Bland, Thomas Bland, and Patricia Jenkins, requested the Taylorville City Council to rezone the tract from R-1 to R-2, multiple-family residential use, in order that a 126-unit apartment building for the elderly and handicapped could be built upon it. The Taylorville City Council held a joint public hearing on the proposal with the Taylorville Planning Commission on November 19, 1979. At the end of the hearing the planning commission voted three to two against the rezoning proposal. The city council, however, passed Ordinance 1942 rezoning the tract from R-1 to R-2 by a vote of seven to one.

The R-2 classification only allows multiple-family units to a maximum of eight families without a special use permit. Also, the general zoning ordinance of the city of Taylorville, Ordinance 1793, has a height limit of 50 feet for any building without prior approval of the planning commission and city council. The owners, therefore, applied for a special use permit to build a 134-unit, six-story high-rise apartment building to house elderly and handicapped people. On January 7, 1980, another public hearing was held jointly by the city council and the planning commission. The commission voted three to two against the special use permit, but the city council passed Ordinance 1947 granting the special use by a vote of seven to one. The ordinance limited the permitted use to elderly and handicapped tenants because of the limited parking proposed, and it included eight conditions to be performed by the owners and developer of the tract. These were extensive and included widening Cherokee Street, extending sidewalks to a nearby shopping center beyond the end of the property, adding a loop to the water system, and improving storm and sanitary sewer facilities for the area.

Even the ordinance granting the R-2 special use was not sufficient authorization to construct the building as planned. The general zoning ordinance requires two off-street parking spaces per dwelling unit for multiple-family dwellings. The plans for the elderly and handicapped project called for one parking space for every two units. Also, the tract is approximately three-fourths of the size required by the general zoning ordinance for that many dwelling units. In order to get full permission to build the project, the owners applied for zoning variances. The variances were challenged in another suit which is not joined with the case at bar.

On December 7, 1979, a number of owners of property near to or abutting the Bland tract filed a complaint for declaratory judgment against the city of Taylorville, seeking to have Ordinances No. 1942 and

1947 declared invalid. The owners of the Bland tract and the developer of the project were allowed to intervene as defendants and after amendments to the pleadings a two-day bench trial was held. The trial court required written briefs from the parties following the testimony. On April 29, 1980, the trial court held both ordinances invalid as conditional or contract zoning and arbitrary, capricious, and unrelated to the general welfare of the community. The defendants filed a motion for a rehearing. A rehearing was held on June 9, 1980, but the judge did not set aside the order of April 29 as urged by the defendants. On July 8, 1980, the defendants appealed the failure to set aside the order invalidating the ordinances.

In his rulings on petition for declaratory judgment, Judge Slater stated that he was considering Ordinances 1942 and 1947 as a unit "since it appears from the evidence that both ordinances were passed for the purpose of allowing a multiple family residence of 134 units to be built on the premises involved." Defendants challenge that position and assert that each ordinance must be considered separately. Ordinance No. 1942 does not mention the 134-unit elderly and handicapped project, but merely rezones the tract from single-family to multi-family use. The defendants maintain that even if the special use ordinance is invalidated, No. 1942 should survive on its own.

■■ The initial request for rezoning from the owners of the Bland tract made clear the intended housing project use. The testimony at the public hearing on Ordinance No. 1942 went to the proposed project and not to any other multi-family uses, such as low-rise apartments without age or handicap limitations. The Taylorville City Council passed the rezoning ordinance in order to take the first step toward allowing the elderly and handicapped project. The Illinois Supreme Court dealt with a similar question thus:

> "In our opinion, it is appropriate for the court to avoid * * * difficulties by framing its decree with reference to the record before it, and particularly with reference to the evidence offered at the trial. In most of the cases that have come before us in recent years, a specific use was contemplated and the record was shaped in terms of that use." *Sinclair Pipe Line Co. v. Village of Richton Park* (1960), 19 Ill. 2d 370, 379, 167 N.E.2d 406, 411.

The Second District Appellate Court was presented with a similar question. A rezoning ordinance, which was passed in general terms after the landowner had executed a restrictive covenant limiting the intended use of the property, was sought to be upheld after the restrictive covenant had failed. The court refused, saying:

> "We hold the ordinance here in question, void. The ordinance was adopted only because of the limitations contained in the restrictive

covenant." *Cederberg v. City of Rockford* (1972), 8 Ill. App. 3d 984, 988, 291 N.E.2d·249, 252.

Under the circumstances of the case before us it was appropriate for the court to consider the rezoning ordinance and the special use ordinance as a unit in determining their validity.

Zoning ordinances are presumptively valid, and the presumption may only be overcome by clear and convincing evidence. The burden of proof is on the plaintiff. (*LaSalle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 46, 145 N.E.2d 65, 69.) Conditional zoning ordinances, however, are suspect and subject to special scrutiny. Courts have been concerned that municipalities not surrender their governmental authority to determine sound land use, or improperly try to control the use of land. Conditional zoning can also furnish an avenue for corruption of officials. But conditional rezoning is not invalid *per se* in Illinois. (*Goffinet v. County of Christian* (1976), 65 Ill. 2d 40, 51, 357 N.E.2d 442, 448.) The conditions in the rezoning ordinance in the *Goffinet* case were general and related to satisfying existing statutes and regulations of environmental protective agencies. The court in *Goffinet* distinguished those conditions from the very specific ones in *Andres v. Village of Flossmoor* (1973), 15 Ill. App. 3d 655, 304 N.E.2d 700. The supreme court said:

> "The *Andres* case was clearly a demonstration of improper conditional rezoning. The conditions placed in the rezoning ordinance introduced elements of contract, which have no place in the legislative process, and showed an abuse of zoning authority." (*Goffinet v. County of Christian* (1976), 65 Ill. 2d 40, 50-51, 357 N.E.2d 442, 447.)

At the appellate level in the *Goffinet* case, this court said:

> "Some conditional rezoning may be in the public good, subservient to a comprehensive plan, in the best interest of the public health, safety and welfare and enacted in recognition of changing circumstances." (*Goffinet v. County of Christian* (1975), 30 Ill. App. 3d 1089, 1095, 333 N.E.2d 731, 736.)

We were looking at a situation in that case which indicated no detriment to surrounding landowners, no decrease in property values or danger to health or safety of children or adults. Balanced against that was an unquestionable benefit to the entire region by the granting of the special use with conditions attached.

■■ Unlike *Goffinet*, the case before the court involves admitted detriment to the surrounding homeowners and residents of the neighborhood. The question then becomes: is there a reasonable basis of public welfare which requires the change with its resulting loss to the neighbors? (*LaSalle National Bank of Chicago v. County of Cook* (1957), 12 Ill. 2d 40, 47-48, 145 N.E.2d 65, 69.) The *LaSalle* case sets out six factors to be taken into

consideration in determining the validity of a zoning ordinance. No one factor is controlling.

■ The trial court in the case at bar considered each of the six factors in ruling on the petition for declaratory judgment:

(a) The existing uses and zoning of nearby property;

(b) The extent to which property values are diminished by the particular zoning ordinance;

(c) The extent to which the diminished property values promote the health, safety, morals or general welfare of the public;

(d) The relative gain to the public as compared to the hardship imposed on the individual property owners;

(e) The suitability of the subject property for the zoned purposes; and

(f) The length of time the property has been vacant as zoned considered in the context of land development in the area in the vicinity of the subject property. *LaSalle National Bank of Chicago v. County of Cook* (1957), 12 Ill. 2d 40, 46-47, 145 N.E.2d 65, 69.

Under (a), the court took note of the fact that all of the immediately adjacent property was zoned R-1 and was used for single-family residences, schools, and a church. A substantial portion of the nearby area was also single-family residential, with R-2 and business zoning to the west by the shopping center. Under (b) the court noted the testimony that the surrounding dwellings would be diminished in value by the construction of the proposed building. Under (c) the court acknowledged the testimony of projected increased taxes and Federal Government rent subsidy payments as a result of the building, but pointed out the testimony regarding the pending construction of units of housing for elderly and handicapped people elsewhere in the county, including the city of Taylorville. Under (d) the court indicated concern for the threat to the safety of the school children in the area caused by the logical increase in traffic caused by such a dense population increase. Traffic congestion, loss of privacy by the sheer height of the building, and the aesthetic loss of homogeneity of the neighborhood were hardships acknowledged. Under (e) the court questioned the suitability of the tract for the housing project. The court felt the property was more suitable for single-family dwellings, as originally provided before the zoning change. The court found that the fact that the owners would stand to make more money from the land if it were used for the high-rise was not sufficient reason in itself to change the zoning. Under (f) the court took note of the fact that the properties nearby, especially north of the tract, had sold for single-family dwellings with no problem. Also, the evidence indicated the owner of the tract had not made any active attempt to sell the property.

The court found the ordinances arbitrary and capricious and unrelated to the general welfare of the community for the reasons above.

> "The law does not require that the subject property be totally unsuitable for the purpose classified but it is sufficient that a substantial decrease in value results from a classification bearing no substantial relation to the public welfare." *LaSalle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 48, 145 N.E.2d 65, 69-70.

The conditional zoning cases, notably *Goffinet*, talk of uniqueness of location of property for a particular use and overriding public benefit to be derived by allowing the rezoning subject to conditions. The evidence in the instant case did not establish a shortage of areas already zoned R-2 in Taylorville and large enough not to need a size variance. On the contrary, four such areas which met the developer's criteria existed, presumably not totally surrounded by single-family single-story structures.

The court found that "there is no evidence presented that the zoning as set forth herein unquestionably serves the public health, safety and welfare."

> "Where the testimony before the lower court in a bench trial, as here, is contradictory, the weight to be given testimony is a matter for the trial court, and the court's judgment will not be disturbed unless manifestly against the weight of the evidence." *Smith v. County Board* (1980), 86 Ill. App. 3d 708, 716, 408 N.E.2d 452, 460.

We believe the findings and judgment of the trial court are supported by the evidence and should be affirmed.

Judgment affirmed.

KASSERMAN, P. J., and JONES, J., concur.