The METROPOLITAN BOARD OF ZONING APPEALS, DIVISION II, MARION COUNTY, Indiana, Consisting of: Robert Hayes, Chairman, Fred Imhausen, Member, Mrs. Hank Chafee, Member, John Fuller, Member, Michael D. McGinley, Member, Loren Richard Hudson, Mary Ann Hudson, and Noble Centers, Operated by Marion County Association for Retarded Citizens, Appellants (Respondents Below),

v.

Barbara GUNN, Appellee
(Petitioner Below).

No. 2–583A157.

Court of Appeals of Indiana,
Fourth District.

April 23, 1985.

David F. Rees, City-County Legal Div., Ben J. Weaver, Thomas N. Olvey, Johnson & Weaver, Indianapolis, for appellants.

Ted B. Lewis, Donn H. Wray, Christine F. Royce, Stewart Irwin Gilliom Fuller & Meyer, Indianapolis, for appellee.

MILLER, Presiding Judge.

Barbara Gunn petitioned for writ of certiorari from an order issued by the Metropolitan Board of Zoning Appeals (Board), granting a special exception for the establishment of a group home for developmentally disabled adults next-door to Gunn's home. The trial court reversed the Board's order after having concluded the Board had improperly circumvented the requirement for prior approval by the Meridian Street Preservation Commission, its findings were insufficient, and its order was contrary to law. After considering the Board's arguments in opposition to the court's judgment and Gunn's counter-arguments in support thereof, we must find the trial court erred and do reinstate the Board's order. Reversed.

## ISSUES

The issues we address here for purposes of reversal,[1] as distilled from the parties' briefs, are:

1) Whether the Board's action in granting a special exception for a group home for developmentally disabled adults in

---

1. The Board also attacks the constitutionality of the act for the preservation of historic street areas (IND.CODE 18–4–24–1 *et seq.* (1976)). Because we ultimately determine this act does not prohibit the special exception herein, we obviously need not address the constitutional issue.

the Meridian Street preservation area was in contravention of legislation for the preservation of historic street areas (IND.CODE 18-4-24-1 *et seq.* (1976) (now at IND.CODE 14-3-3.2-1 *et seq.*) ); 2) Whether the Board's basic findings of fact in support of said special exception are insufficient to sustain its ultimate findings.[2]

### FACTS

On January 11, 1982, Loren and Mary Ann Hudson filed a petition before the Board for a special exception for 4579 North Illinois Street, Indianapolis, (located in the Meridian Street preservation area) in order to use the property for a group home of no more than eight developmentally disabled adults. Shortly thereafter, a like petition with its filing fee was returned to the Hudsons' counsel by the Meridian Street Preservation Commission (Commission) because it was the Commission's opinion such exception was prohibited by the historic preservation act, specifically I.C. 18-4-24-19, regarding the habitation of single-family dwellings in the Meridian Street preservation area. However, after hearing evidence, the Board, on April 20, granted the Hudsons a group home special exception with the following findings and conclusions:

### "FINDINGS OF FACT

1. THE GRANT OF THE SPECIAL EXCEPTION WILL NOT BE INJURIOUS TO THE PUBLIC HEALTH, SAFETY, MORALS, CONVENIENCE OR GENERAL WELFARE because: The intended residents of the proposed group home are in no way injurious as aforesaid, and the use of the subject real estate by said residents will be consistent with the residential character of the neighborhood.

2. THE GRANT OF THE SPECIAL EXCEPTION WILL NOT INJURE OR ADVERSELY AFFECT THE ADJACENT AREA OR PROPERTY VALUES THEREIN because: There will be no externally discernible change from the present appearance or use of the subject real estate, and it will remain essentially a residential use.

3. THE GROUP HOME WILL BE IN HARMONY WITH THE CHARACTER OF THE DISTRICT AND LAND USE AUTHORIZED THEREIN because: The use of the subject real estate will remain residential, and there will be no deviation from the residential character of the neighborhood which would be incompatible or inconsistent with surrounding land use.

4. THE SUBJECT REAL ESTATE IS NOT LOCATED WITHIN THREE THOUSAND (3,000) FEET, FROM BUILDING LOT LINE TO BUILDING LOT LINE, OF ANOTHER GROUP HOME FOR DEVELOPMENTALLY DISABLED PERSONS because: No other group home for developmentally disabled persons exists in this area, and the nearest group home to the subject real estate is well beyond three thousand (3,000) feet from the building lot line of the subject real estate.

5. THE GROUP HOME WILL BE LICENSED BY THE DEVELOPMENTAL DISABILITIES RESIDENTIAL FACILITIES COUNCIL AND WILL COMPLY WITH ANY AND ALL AP-

---

**2.** The Board's appellate brief extensively argued that, in addition to its basic findings buttressing its ultimate findings, the evidence presented sufficiently supported its basic findings. Thus, the Board runs the gamut of proper administrative review here on appeal. *See, e.g., Carlton v. Board of Zoning Appeals of Indianapolis* (1969), 252 Ind. 56, 245 N.E.2d 337; *Boffo v. Boone County Board of Zoning Appeals* (1981), Ind.

App., 421 N.E.2d 1119. However, Gunn does not argue the evidence is not sufficient to support the Board's basic findings and, in fact, argues the trial court did not even address this aspect of its administrative review. We will, therefore, consider the issue to be undisputed and concern ourselves with only whether the Board's basic findings support its ultimate findings.

PLICABLE REQUIREMENTS OF THE STATE FIRE MARSHAL, IN ACCORDANCE WITH INDIANA LAW, PRIOR TO THE OCCUPANCY AND OPERATION OF THE GROUP HOME.

6. THE GROUP HOME CONTAINS AT LEAST TWO HUNDRED (200) SQUARE FEET OF HABITABLE FLOOR AREA FOR EACH RESIDENT because:

There is a total of 3746 square feet of habitable floor area, and the maximum number of full-time residents is nine (9).

7. THE PLAN OF OPERATION OF THE GROUP HOME IS RESIDENTIAL IN NATURE because:

The Plan of Operation, filed herein, demonstrates that the activities and functions performed by the intended residents are consistent and compatible with residential use and the residential character of the surrounding area.

### DECISION

IT IS THEREFORE the decision of the Board that GROUP HOME SPECIAL EXCEPTION 82 SE2–4 is hereby granted, subject to any conditions stated in the minutes of this Board (which conditions are incorporated herein by reference and made a part of this decision)."

Record, pp. 114–15.

One month later on May 19, Gunn, a resident at 4577 North Illinois Street, petitioned the Marion Superior Court for a writ of certiorari to review the Board's decision. After hearing arguments of counsel, the court reversed the Board's action on the following pertinent findings and conclusions:

"FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT ENTRY

\*      \*      \*      \*      \*      \*

2. The Respondents, Loren Richard Hudson, Mary Ann Hudson and Noble Centers, were the petitioners in Case No. 82 SE2–4 before the Board wherein said Respondents requested approval under City-County General Ordinance No. 41,-1981, Docket No. 81–AO–2 to use the real estate commonly known as 4579 North Illinois Street, Indianapolis, Indiana, as a Group Home for developmentally disabled persons.

3. The real estate commonly known as 4579 North Illinois Street, Indianapolis, Indiana, which is the subject matter of Case Number 82 SE2–4, is more particularly described as follows:

[LEGAL DESCRIPTIONS]

4. The Petitioner, as the adjoining landowner of real estate commonly known as 4577 North Illinois Street, Indianapolis, Indiana, is aggrieved in a personal and a pecuniary way by the Board's decision in Case Number 82 SE2–4 which granted Respondents' petition and which decision was entered, pursuant to the Board's adopted findings of fact, on April 20, 1982.

\*      \*      \*      \*      \*      \*

6. The real estate in question is located in the Meridian Street Preservation District, which was created by Acts 1979, Public Law 260 of the Indiana Legislature, entitled 'An Act to Amend the Indiana Code of 1971, 18–4, by adding a new chapter concerning preservation of historically and architecturally significant areas and streets in cities and towns.' At the time the Request for a Special Exception was filed with the Metropolitan Board of Zoning Appeals, said Act was codified as Sections 18–4–24–1 et seq. of the Indiana Code, 1971.

7. Loren Richard Hudson and Mary Ann Hudson filed a petition with the Meridian Street Preservation Commission for approval of the request for special exception, pursuant to § 18–4–24–13 of the Indiana Code, 1971, which was denied by the Commission on January 19, 1982.

8. Loren Richard Hudson and Mary Ann Hudson did not seek review of the

Commission's decision by writ of certiorari pursuant to § 18–4–24–21 of the Indiana Code, 1971.

9. The Meridian Street Preservation District consists entirely of residential dwelling districts, including schools and churches on land designated not as different zoning classifications, but as special uses.

10. All of the dwellings in the Meridian Street Preservation District are single-family dwellings.

11. In 1971, when the act creating the Meridian Street Preservation District was enacted, there were no special exceptions in existence in the Marion County Dwelling District Ordinance.

12. The Petition for a Special Exception stated that the proposed Group Home would be occupied by eight (8) developmentally disabled individuals, plus a non-resident staff person.

## CONCLUSIONS OF LAW

\* \* \* \* \* \*

3. The ordinance under which the petition for special exception was filed is City-County General Ordinance Number 41,1981, Docket Number 81–AO–2, which sets forth seven (7) standards, all of which must be satisfied prior to the granting of a special exception....

\* \* \* \* \* \*

4. Section 18–4–24–13(a) of the Indiana Code, 1971, provides that no zoning variances or petition for the amendment or adoption of any zoning ordinance pertaining or applying to any Meridian Street property or bordering property shall be granted, adopted or amended without the prior approval of the Meridian Street Preservation Commission.

5. Section 18–4–24–21 of the Indiana Code, 1971, provides for the review of every final determination of the Meridian Street Preservation Commission by filing a verified petition for writ of certiorari with the Circuit or Superior Court of Marion County within sixty (60) days after the date of final determination.

6. Although the Board has jurisdiction to hear requests for variances and special exceptions, the requirement imposed by § 18–4–24–13(a) makes the prior approval of the Meridian Street Preservation Commission, or a favorable determination on review pursuant to § 18–4–24–21, a jurisdictional condition precedent to the exercise of the Board's jurisdiction and to the granting of any such request.

7. Section 18–24–19 of the Indiana Code, 1971, requires that single-family dwellings within the Meridian Street Preservation District are to be occupied by no more than one family, and defines a family to mean one or more individuals, all related to one another by marriage, consanguinity or legal adoption.

8. The provisions of §§ 18–4–24–1 et. seq. of the Indiana Code, 1971, demonstrate an intent on the part of the legislature to control the use of land within the Meridian Street Preservation District, and that any proposed changes in or deviations from that use be reviewed and approved by the Meridian Street Preservation Commission.

9. Although there is normally a substantive difference between a variance and a special exception, this request for special exception, constituted a proposed change in the use of Meridian Street property which the legislature intended to be reviewed and approved by the Meridian Street Preservation Commission pursuant to § 18–4–24–13(a) of the Indiana Code, 1971, and that special exceptions are included within the meaning of the word 'variance' in said statute.

10. The Board's finding number (1) that:

'THE GRANT WILL NOT BE INJURIOUS TO THE PUBLIC HEALTH, SAFETY, MORALS, CONVENIENCE OR GENERAL WELFARE because:

The intended residents of the proposed group home are in no way injurious as aforesaid, and the use of the subject real estate by said residents will be

consistent with the residential character of the neighborhood.'

says only that the individuals to reside in the Home themselves will not be injurious, and says nothing as to whether the grant of the special exception would be injurious to the public health, safety, morals, convenience or general welfare. As such, the finding bears no relationship to the subject matter of the requirements of the Ordinance, does not support the requirements of the Ordinance, and is legally insufficient.

11. The Board's finding number (2) that:

'THE GRANT WILL NOT INJURE OR ADVERSELY AFFECT THE ADJACENT AREA OR PROPERTY VALUES THEREIN because:

There will be no externally discernible change from the present appearance or use of the subject real estate, and it will remain essentially a residential use,'

is silent about the effect of the Group Home on adjacent property values, does not support the requirements of the Ordinance, and is legally insufficient.

12. The Board's finding number (3) that:

'THE GROUP HOME WILL BE IN HARMONY WITH THE DISTRICT AND LAND USE AUTHORIZED THEREIN because:

The use of the subject real estate will remain residential, and there will be no deviation from the residential character of the neighborhood which would be incompatible or inconsistent with surrounding land use.'

is contrary to law in that § 18-4-24-19 of the Indiana Code, 1971, requires that single-family dwellings within the Meridian Street Preservation District are to be occupied by no more than one family, as defined by the same statute. The proposed Group Home, housing nine (9) unrelated individuals, would violate the requirements of said statute.

13. The decision of the Board was contrary to law.

IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED tht [sic] the decision of the Metropolitan Board of Zoning Appeals of Marion County, Indiana, Division II, granting respondents' request for a special exception, be, and the same hereby is, reversed."

Record, pp. 266–74. The Board disputes these conclusions; we agree they are incorrect.

## DECISION

When a trial court is asked to review a decision by a board of zoning appeals, it is constrained by the following fundamental principles. A writ of certiorari alleging the illegality of a board's decision is the only device for seeking trial court review. IND.CODE 36–7–4–1003, 36–7–4–1009. In other words, the court may examine the board's decision to determine if it was incorrect as a matter of law. *See Miller v. Board of Zoning Appeals of Rochester* (1979), Ind.App., 397 N.E.2d 1091; *Metropolitan Board of Zoning Appeals of Marion County* (1965), 137 Ind. App. 403, 209 N.E.2d 36; *Board of Zoning Appeals of Indianapolis v. American Fletcher National Bank & Trust Co.* (1965), 139 Ind.App. 9, 205 N.E.2d 322. The trial court may not conduct a trial *de novo* and may not substitute its decision for that of the board absent such illegality. *Boffo v. Boone County Board of Zoning Appeals* (1981), Ind.App., 421 N.E.2d 1119. Thus, generally, if there is sufficient evidence to support the board's decision which is otherwise legal, it must be upheld. *E.g., Miller v. Board of Zoning Appeals of Rochester, supra,* 397 N.E.2d 1091. On appeal, this court is restricted by the same considerations. *See Nelson v. Board of Zoning Appeals of Indianapolis* (1959), 240 Ind. 212, 162 N.E.2d 449. With these restraints in mind, we examine Gunn's attack on the Board's order allowing the group home and the trial court's conclusions thereon.

Gunn's writ alleged three specific failings in the Board's grant of the special exception: 1) the Board lacked jurisdiction

over the matter, subject matter and "procedural"; 2) the Board failed to make findings of fact, or 3) in the alternative, the order was not supported by substantial evidence of probative value. Record, pp. 2–6. The actual rationale for the trial court's reversal of the Board's order is not clear, but it recited various grounds therefor, which can be generalized from its decision (reproduced above) as follows: The Board lacked jurisdiction to entertain the Hudsons' petition for special exception because the Commission, not the Board, had been granted the exclusive statutory authority of an initial determination. The court concluded the Hudsons had thus failed to properly exhaust its administrative remedies by requesting their own writ of certiorari when the Commission returned their petition and fees. In addition, the trial court determined that regardless of Hudsons' jurisdictional problems, the Meridian Street preservation act itself prohibited the special exception from being granted. Lastly, the court found fault with the findings of fact, declaring the Board's specific findings insufficient to support its ultimate findings.

Extracting the kernel of law from these conclusions, we perceive two challenges to the legality of the Board's decision and one to its regularity. *See Board of Zoning Appeals of Indianapolis v. Moyer* (1940), 108 Ind.App. 198, 27 N.E.2d 905 (distinguishes "illegality" from "irregularity").[3] The two attacks on the order's *illegality* are essentially that there was not substantial evidence of probative value 1) to sustain the Board's jurisdiction because the Hudsons failed to exhaust their proper administrative remedies (the Meridian Street Preservation act having endowed the Commission with exclusive jurisdiction over special exceptions in the locale) and 2) to contraindicate the Meridian Street preserva-

tion act's clear prohibition of a group home in the locale. On the other side, the allegation of *irregularity* stems from the claim that the Board's specific findings fail to adequately support its ultimate findings. (We remind Gunn at this point that she has conceded there is no argument as to the sufficiency of the evidence with regard to the findings, *see* fn. 1, *supra*, thus reducing a potential argument for "illegality" to one of "irregularity" only.) We find no merit to Gunn's claims of illegality but do find that, with respect to irregularity, one ultimate finding is supported by an incomplete statement of specific facts.

*Legality of Special Exception*

■ Reiterating briefly a portion of the immediately preceding, we believe that Gunn and the trial court are contending the Board acted illegally when it granted the special exception for the group home in two respects: the Hudsons' only route of administrative recourse was through the Commission as exclusive arbiter of the Meridian Street preservation act rather than through the Board, and regardless of administrative review, the exception itself is impliedly prohibited by the act. Instead of answering these attacks directly and separately, we have determined it would be more comprehensible to combine these arguments into one broad discussion addressing whether there was sufficient legal authority for the Board to grant a special exception for a group home in the Meridian Street preservation area. We conclude that there is.

■ In 1981, the City-County Council of Indianapolis and Marion County adopted an amendment to its dwelling district zoning ordinance such that D–2 districts (the

---

3. "An *illegality* within the meaning of the statute [Burns' § 48–2305 (1933), now IND.CODE 36–7–4–1003] under consideration goes to the foundation of the action and discloses that the proceedings have nothing to stand upon while an *irregularity* denotes that the board had jurisdiction of the proceedings but failed to consummate its work in all respects according to the forms prescribed. It is the general rule that courts are inclined to treat defects that are not plainly jurisdictional as irregularities rather than as illegalities."
*Board of Zoning Appeals of Indianapolis v. Moyer* (1940), 108 Ind.App. 198, 210, 27 N.E.2d 905, 910 (emphasis added).

Meridian Street preservation area, for example) would permit the following uses: [4]

"The following uses shall be permitted in the D–2 DISTRICT. All uses in the D–2 DISTRICT shall conform to the D–2 Development Standards (section 2.03 B) and the Dwelling District Regulations of section 2.00.

1. ONE–FAMILY DWELLING
2. TWO–FAMILY DWELLING, (permitted on corner lots only)
3. GROUP HOMES, as regulated in section 2.18.
4. TEMPORARY USES, as regulated in section 2.14.
5. ACCESSORY USES, as regulated in section 2.15.
6. HOME OCCUPATIONS, as regulated in section 2.16."

Record, p. 12. The ordinance goes on to clarify, in its section 2.18, how to get permission to put a group home in a D–2 District:

"Group homes for developmentally disabled persons ... shall be permitted in all Dwelling Districts (except the D–11 District) and in any other zoning district in Marion County permitting dwelling uses, subject to the grant of a SPECIAL EXCEPTION. The Metropolitan Board of Zoning Appeals of Marion County, Indiana, is hereby authorized to grant such SPECIAL EXCEPTIONS and permit such Group Homes in the Dwelling Districts."

Record, p. 16. Gunn argues that the instant special exception was error, despite the fact the Meridian Street preservation area is D–2, because the City-County Council's ordinance is superseded by statutes giving only the Commission the power to grant exceptions.

The corridor of land known as the Meridian Street preservation area is currently protected by a legislative act governing the preservation of historic street areas. I.C. 18–4–24–1 *et seq.* The purpose of such act was to

"preserve from deterioration, and from improperly conceived or implemented change, and to preserve for the continued health, safety, enjoyment and general welfare of the citizens of Indiana, an historic, scenic, aesthetically pleading, [sic] and unique portion of a street lying within the City of Indianapolis constituting the backbone of a unique residential area and other such streets and areas in Indiana. The Legislature intends, by passage of this Chapter, to encourage private efforts to maintain and preserve such portion of such street and other such streets and areas in Indiana, to promote orderly and proper land usage and to preserve significant tourist attractions of historical and economic value in the State of Indiana, by limiting and restricting unhealthful, unsafe, unaesthetic, or other use of unique areas which would be inconsistent with their character as tourist attractions and with the general welfare of the public."

---

**4.** In her appellate brief, Gunn additionally attacks the validity of the ordinance itself, claiming it was improperly passed without the prior approval of the Commission. Gunn's argument is ill-advised for four reasons: (1) The Commission's approval of an amendment to or adoption of zoning ordinances is not required; only a "recommendation" is. *See* IND.CODE 18–4–24–13(b)(2) (1976) now IND.CODE 14–3–3.2–13(b)(2). (2) Gunn did not include this issue in her writ of certiorari, thereby waiving any later argument thereon. *See Kessler-Allisonville Civic League, Inc. v. Marion County Board of Zoning Appeals* (1965), 137 Ind.App. 610, 209 N.E.2d 43. (3) Gunn had the burden of proof that the ordinance was invalid as having been improperly promulgated. *See Nolan v. City of Taylorville* (1981), 95 Ill.App.3d 1099, 51 Ill.Dec. 479, 420 N.E.2d 1037; *see also Board of Commissioners of Howard County v. Kokomo City Plan Commission* (1975), 263 Ind. 282, 330 N.E.2d 92 (statute). She presented absolutely no evidence of impropriety beyond the presentation of conclusory allegations and has thereby failed to make *any* case, much less a prima facie one. (4) The Board is not the proper body before whom the validity of the ordinance may be challenged. Such question is for the City-County Council, who promulgated the ordinance, by direct appeal. *See Bryant v. Lake County Trust Co.* (1972), 152 Ind.App. 628, 284 N.E.2d 537; *Board of Zoning Appeals of Indianapolis v. Waintrup* (1935), 99 Ind.App. 576, 193 N.E. 701; *see also* IND.CODE 36–7–4–1009 (writ of certiorari from "decision of the *board of zoning appeals.*")

I.C. 18–4–24–1. To this end, the act formulated the entity of the Commission, established procedures for it, established restrictions on new construction, etc. The Commission was also empowered to veto zoning variances in the area:

"(a) Upon and after the effective date of this Chapter no zoning *variance* relating to the use of any Meridian Street Property or Bordering Property shall be granted by any administrative, Legislative or other governmental body without the prior approval of the Commission upon the affirmative vote of six (6) or more of its members. The Commission shall approve such variance only if the petition therefor shall establish by substantial evidence of probative value the correctness of the conclusions set out in subparagraphs (1) through (4) of paragraph (c) of this section, and that notices of such hearing have been given to all Interested Parties in the manner required by this Chapter."

I.C. 18–4–24–13 (Emphasis added.) However, there is no mention of any power over the grant or denial of special exceptions, as is specifically vouchsafed to boards of zoning appeals generally:

"(b) Except as otherwise provided in this section, a board of zoning appeals shall:

(1) hear and determine all *special exceptions* to the terms of the zoning ordinance...."

IND.CODE 36–7–4–918(b) (1981). (Emphasis added.) This is accorded to the Board here in addition to the ability to determine petitions for variances:

"(e) METRO. In addition to the duties in subsection (b), each division of the metropolitan board of zoning appeals and each municipal board of zoning appeals for an excluded city shall:

 *     *     *     *     *     *

(2) grant or deny *variances* of use from the terms of the zoning ordinance in accordance with subsection (f)...."

IND.CODE 36–7–4–918(e) (1981) (Emphasis added.) It is self-evident to us that the legislature's specific expression that the Commission must rule on variances pertinent to the neighborhood is in direct contrast to its grant to the Board to deal with *both* variances *and* special exceptions. The legislature's action in particularizing the Commission's authority over variances, by implication excludes any authority over special exceptions: *expressio unius est exclusio alterius*. *See generally Maroon v. State, Department of Mental Health* (1980), Ind.App., 411 N.E.2d 404. And we cannot add this authority in the face of such purposeful omission. *See generally Schwartzkopf v. State ex rel. Fettig* (1965) 246 Ind. 201, 204 N.E.2d 342; *Town of Schererville v. Vavrus* (1979), 180 Ind.App. 500, 389 N.E.2d 346. We therefore conclude a comparison of the statutes describing the powers of both the Board and the Commission reveals the Commission had no power to deal with the exception for a group home.

There is also no possibility that the legislature's use of the word "variance" by implication included "special exceptions." Very recently this court explained what has long been recognized as the distinctions between a variance and a special exception:

"A variance involves a deviation or change from the legislated zoning classification applicable to a certain piece of property. The granting of a variance by the Board is discretionary even though the petitioner may have satisfied the statutory criteria. A special exception involves a use which is permitted within the given zoning classification once certain statutory criteria have been satisfied. The granting of a special exception is mandatory upon compliance with the statutory criteria set forth in the ordinance."

*Ash v. Rush County Board of Zoning Appeals* (1984), Ind.App., 464 N.E.2d 347, 350; *Boffo v. Boone County Board of Zoning Appeals, supra,* 421 N.E.2d 1119; *see also Long v. Board of Zoning Appeals for Indianapolis* (1962) 134 Ind.App. 97, 182 N.E.2d 790. It is clear that the two are distinct and separate concepts, neither including the other by implication. Thus, there is absolutely nothing in the Meridian

Street preservation act which in any way conveyed to the Commission exclusive jurisdiction over this special exception which in fact was the Board's exclusive bailiwick. The trial court erred in any and all conclusions so holding.

Even conceding the Board's sole authority to grant or deny special exceptions, Gunn contends the Board was preempted from granting this particular exception because of prohibitions in the preservation act. She relies on the following statutory language:

> "Every Owner and Occupant of Meridian Street or Bordering Property shall:
>
> (1) Permit no more than one (1) family to inhabit a single-family dwelling.
>
> (2) Permit no more than two (2) families to inhabit a double family dwelling. . . .
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> For the purposes of this Chapter: a 'Family' shall mean one (1) or more individuals, all related to one another by marriage, consanguinity or legal adoption, living together as a single household with a single head thereof, together with any live-in paid domestic employees and up to two (2) nontransient guests of such household; and 'bedroom' shall mean a room, consisting of a [sic] not less than eighty (80) usable square feet and one (1) built-in closet, which is located on or above the first floor of such structure."

IND.CODE 18–4–24–19 (1976) (now at IND. CODE 14–3–3.2–18, 14–3–3.2–19).

> " 'Single Family or Double Family Residential Dwellings' means residential structures which share no common wall with any other residential structures, which were designed and built for occupancy by no more than two (2) separate families and which contain no more than two (2) separate living quarters."

IND.CODE 18–4–24–2(13) (1976) (now IND. CODE 14–3–3.2–3). Gunn reads these provisions as creating a restriction upon the operation of a group home in the preservation neighborhood and argues the proposed group home is a single-family dwelling in which only a "family," as defined above, may reside. She thus argues that the preservation statute preempts local authority from enacting conflicting ordinances. We believe Gunn stops short of observing the entire picture and find no conflict.

We reiterate the principle we just enunciated that virtually the only control given to the Commission by the legislature was over *variances* to the zoning in the Meridian Street preservation area. It was given almost no power over ordinances themselves, that ultimate authority having been bestowed here on the City-County Council. As Gunn has pointed out, the City-County Council's authority in zoning to accommodate for group homes is regulated by IND. CODE 16–10–2.1–6.5 (1982) (now IND. CODE 16–13–21–12):

> "*Zoning ordinances adopted under IC 18–7 [36–7] may not exclude a residential facility from a residential area solely* because the residential facility is a business or *because the persons residing in the residential facility are not related,* unless the residential facility will be located within three thousand (3,000) feet of another residential facility, as measured between lot lines. The residential facility may be required to meet all other zoning requirements, ordinances, and laws."

(Emphasis added.) A comparison of this authority appears to be in conflict with the preservation act inasmuch as that act seems to restrict the meaning of "family" in the Meridian Street area whereas I.C. 16–10–2.1–6.5 forbids such restriction in the formulation of ordinances in general. However, further investigation reveals there is an additional provision in the preservation act which reconciles that act with I.C. 16–10–2.1–6.5.

We quoted two provisions of I.C. 18–4–24–19, which invests preservation area property owners with the duty to control the habitation of single- and double-family dwellings. A third clause is also present:

> "Every Owner and Occupant of Meridian Street or Bordering Property shall:

(1) Permit no more than one (1) family to inhabit a single-family dwelling.

(2) Permit no more than two (2) families to inhabit a double family dwelling;

(3) Permit to inhabit *any dwelling unit* no more than that number of persons derived by multiplying the total number of bedrooms in such unit by the number of three (3). . . ."

I.C. 18-4-24-19 (emphasis added). It is important to note that *"any* dwelling unit" is the language used here, as opposed to "either," for instance, which would better refer to the two types of dwellings (as opposed to "dwelling units") previously listed in the statute. It is quite apparent to us that, contrary to Gunn's contentions, the Meridian Street preservation area is *not* limited to single- and double-family dwellings. Nor is there a prohibition against non-family habitation of "any dwelling unit."[5] Rather, the statute contemplated all dwellings for which the City-County Council would zone, in this case D-2, so long as the area maintained its residential character in keeping with the purpose of the act, to preserve "an historic, scenic, aesthetically pleasing, and unique portion of a street." I.C. 18-4-24-1. One such dwelling unit could be a group home which is a "residential facility," as defined by statute. IND.CODE 16-10-2.1-1 (1982) now IND.CODE 16-13-21-1. Such residential facility is not limited to families, as they are defined for purposes of single- and double-family dwellings as related individuals, and I.C. 16-10-2.1-6.5, *supra,* specifically prohibits zoning restrictions founded on such definition anyway. Thus, we are unable to find any conflict between the preservation act, which impliedly allows non-family residential exceptions, and the ordinance here, which is based on statutes governing homes for the developmentally disabled.

We also deem our conclusion to be consonant with general public policy.

"[T]he ultimate purpose of zoning regulations is to confine certain classes of uses and structures to certain areas." *Misner v. Presdorf* (1981), Ind.App., 421 N.E.2d 684, 686. Thus, it is proper for a municipal authority to designate certain areas as "residential" and "to restrict those uses which would conflict with a stable, incongested single-family environment." *Incorporated Village of Freeport v. Association for the Help of Retarded Children* (1977), 94 Misc.2d 1048, 406 N.Y.S.2d 221, 222. In the obverse, then, a municipal authority may *authorize* those uses which maintain such a residential environment. A group home has such a "generic" quality of residential ambience because its purpose is to so provide the qualities of a stable and permanent household to the developmentally disabled. *Id.* What Gunn asks that we do is make a distinction among households based upon intimate or genetic relations rather than land use control. This, we believe, is inappropriate. *See, e.g., Hessling v. City of Broomfield* (1977), 193 Colo. 124, 563 P.2d 12.

The legislature has spoken clearly on the subject of "main-streaming" developmentally disabled adults into normal family environments rather than having them institutionalized. *See* IND.CODE 16-10-2.1-1 (1982) *et seq.* (now IND.CODE 16-13-21-1 *et seq.* ) The policy is clear. The Meridian Street preservation act, on the other hand, controls the land use policy in a specific Indianapolis neighborhood by giving the inhabitants thereof a modicum of self-determinism regarding the manner in which the complexion of their locale may or may not be changed by variances from its essentially residential character. The policy therein is not one of controlling the character of the households except in denominated single- and double-family dwellings. If one such dwelling is granted a recognized exception to be labelled a group home, neigh-

---

**5.** The absence of any express prohibition on non-families does not, however, authorize non-family habitation of single- and double-family dwellings. We read the statute to allow that *special exceptions* to ordinances, such as here, will include non-family uses which the preservation act can limit only by number of residents, thereby maintaining a "family"-like residential quality.

boring inhabitants are not empowered to prevent it on the basis of the lack of a familial relationship. The trial court erred as a matter of law in finding otherwise.

*Irregularity of Findings of Fact*

The trial court declared three of the Board's conclusions of law were not supported by findings of facts. In so doing, he was following the dictates of well-established precedent regarding the judicial review of a decision by a board of zoning appeals:

"[T]he Board must in all cases set out written findings of fact in support of their decision so that this Court may intelligently review that specific decision without speculating as to the Board's reasoning. Written findings of fact help to maintain the integrity of the Board's decision by insuring that our review is strictly limited to those findings."

*Kunz v. Waterman* (1972), 258 Ind. 573, 577, 283 N.E.2d 371, 373; *Carlton v. Board of Zoning Appeals of Indianapolis* (1969), 252 Ind. 56, 245 N.E.2d 337; IND. CODE 36–7–4–915 ("The board shall in all cases heard by it make written findings of fact.") These basic findings of fact are not sufficient to support the Board's ultimate findings if they are merely a general replication of the requirements of the ordinance at issue. *See generally Carlton v. Board of Zoning Appeals of Indianapolis, supra* (statutes). Such generality of finding is chiefly at the heart of the trial court's conclusions here. We believe in one instance he was correct.

The ordinance at issue here has seven requirements which must be met before the Board may grant an exception for a group home. *See* Board's Order, *supra*. Gunn attacks the findings of facts supporting three. The first one is:

"1. THE GRANT OF THE SPECIAL EXCEPTION WILL NOT BE INJURIOUS TO THE PUBLIC HEALTH, SAFETY, MORALS, CONVENIENCE OR GENERAL WELFARE because: The intended residents of the proposed group home are in no way injurious as aforesaid, and the use of the subject

real estate by said residents will be consistent with the residential character of the neighborhood."

The trial court criticized the findings here as bearing no relationship to the ordinance, not supporting the ordinance, and being legally insufficient. We believe the findings of fact do bear a significant relationship to the subject matter, the first finding being merely a paraphrase of the ordinance's first requirement as it is set forth in caps. But this is not enough. *See Carlton v. Board of Zoning Appeals of Indianapolis, supra.* Both findings are statements of general policy which would uphold the ultimate finding that the exception would not be injurious to the public health, etc., but we agree the findings are incorrect as not being sufficiently specific. Inasmuch as Gunn has no quarrel with the sufficiency of the evidence to support these two general findings, which *do* support the ultimate finding, we need only remand for a correction of the irregularity by breaking the generalities down into more specific findings. *See Habig v. Harker* (1983), Ind. App., 447 N.E.2d 1114 ("Where a board of zoning appeals has failed to make findings, the proper action of the trial court is to remand for the entry of findings." *Id.* at 1117); *Metropolitan Board of Zoning Appeals of Marion County v. Graves* (1977), 172 Ind.App. 459, 360 N.E.2d 848.

The second finding attacked is:

"2. THE GRANT OF THE SPECIAL EXCEPTION WILL NOT INJURE OR ADVERSELY AFFECT THE ADJACENT AREA OR PROPERTY VALUES THEREIN because: There will be no externally discernible change from the present appearance or use of the subject real estate, and it will remain essentially a residential use."

The trial court again stated the basic findings to support the capitalized requirement of the ordinance were insufficient and not supportive. In addition, it declares the basic findings are silent on the effect of the group home on adjacent property values. On the contrary, the Board has directly

addressed the issue of property values by stating in very specific terms that there will be no alteration of appearance or use of the subject real estate. We fail to see how the Board could have rendered findings as the court would demand without being too general as a restatement of the ordinance itself. We have already established this would be improper. The Board properly stated the effect (the ordinance requirement) with its specific supporting causes.

The last of the three findings under attack is:

"3. THE GROUP HOME WILL BE IN HARMONY WITH THE CHARACTER OF THE DISTRICT AND LAND USE AUTHORIZED THEREIN because:

The use of the subject real estate will remain residential, and there will be no deviation from the residential character of the neighborhood which would be incompatible or inconsistent with surrounding land use."

The trial court found this improper as a matter of law by finding the exception to be in conflict with the single-family dwelling provision of the Meridian Street preservation act. We have already dispensed with this argument contrary to the court's conclusion. There is no need for further discussion on this point.

We conclude the Board properly granted the exception here on the law, and Gunn concedes she has no further appeal with regards to its merits. Therefore, all that is left to us is to remand to the trial court for remand to the Board for the formality of making the basic findings of ultimate finding Number One more specific.

Reversed and remanded.

YOUNG, J., concurs.

CONOVER, J., dissents with separate opinion.

CONOVER, Judge, dissenting.

I respectfully dissent. The majority has misconstrued the statute at issue herein. The trial court correctly interpreted IND. CODE 14–3–3.2–2 as limiting single family dwellings within the historic preservation district to occupancy by only one family. The majority states this language appears to be in conflict with IC 16–10–2.1–6.5 which prohibits exclusion of residential facilities based on lack of a family relationship between the residents. I see no conflict, however.

IC 16–10–2.1–6.5 refers to zoning ordinances adopted under IC 18–7(36–7). This statute, however, deals with local governmental zoning ordinances. The statute in question here is *not* a local zoning ordinance. It is a statute passed by our state legislature. It establishes as state law a historic preservation district and sets forth specific guidelines to protect that district. Since the scope of IC 18–7 is limited to zoning ordinances on the local level, I believe it is inappropriate to attempt to use its language to control a separate section of the Indiana Code.

Furthermore, even if the two sections were in conflict, IC 18–7, relied on by the majority, is general in nature. It refers to all local zoning ordinances. IC 14–3, however, is specific as to the particular area in question and the guidelines to be followed in protecting that area. It is well settled where statutes are in conflict the specific statute will prevail over the more general one as to the subject matter it covers. *Higgins, et al. v. Hale, et al.* (1985), Ind., 476 N.E.2d 95, 100; *Indiana State Highway Commission v. Bates & Rogers Construction Co.* (1983), Ind.App., 448 N.E.2d 321, 324; *State v. Souder* (1983), Ind.App., 444 N.E.2d 891, 893.

The majority further tries to show the intent of IC 14–3 is not to limit housing in the Meridian Street Preservation District by interpreting a portion of that section which reads:

"Every Owner and Occupant of Meridian Street or Bordering Property shall:

(1) Permit no more than one (1) family to inhabit a single-family dwelling.

(2) Permit no more than two (2) families to inhabit a double family dwelling;

(3) Permit to inhabit any dwelling unit no more than that number of persons derived by multiplying the total number of bedrooms in such unit by the number of three (3)...."

The majority states if the legislature intended for there to be only single and double family dwelling units in this district it would not then have used the phrase "any dwelling unit" in paragraph 3 but rather would have used "either dwelling unit". The majority's interpretation of the significance of the use of the word "any" in paragraph 3 would be correct if the paragraph referred to any dwelling unit *classification* but it does not. It refers to *any* dwelling unit, of which there are probably hundreds in the Meridian Street Preservation District.

While I agree with the majority the Meridian Street Preservation Commission has absolute approval rights over only zoning variances in the preservation district not over special exceptions to the zoning ordinance, I agree with the appellee and the trial court such zoning ordinances as passed by the local governmental unit must first comply with the State statute, and any portions thereof which are in conflict are void. I would, therefore, affirm.